PEOPLE v SLOAN

Docket No. 100580. Argued May 4, 1995 (Calendar No. 17). Decided
August 22, 1995. Rehearing denied *post,* 1212.

Robert L. Sloan was charged in the Detroit Recorder's Court with
manslaughter with a motor vehicle, operating a motor vehicle
while under the influence of intoxicating liquor causing a
death, and felonious driving. The court, Bruce U. Morrow, J.,
denied the defendant's motion to suppress blood test results
obtained pursuant to a search warrant. The Court of Appeals,
GRIBBS, P.J., and REILLY and T. L. BROWN, JJ., reversed in an
opinion per curiam, holding that the trial court was not justi-
fied in relying on the magistrate's testimony after the fact
regarding off-the-record statements in finding that the factual
basis for the warrant was sufficient, and concluded that because
the affidavit failed to establish probable cause, the search
warrant was invalid and the blood test results should have
been excluded (Docket No. 168967). The people appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
BRICKLEY, and Justices LEVIN and MALLETT, the Supreme Court
*held:*

When a reviewing court assesses whether probable cause has
been established under MCL 780.653; MSA 28.1259(3), for the
issuance of a search warrant, the reviewing court may not
consider sworn, yet unrecorded, oral testimony that, in addition
to an affidavit, was presented to the magistrate before the
warrant was issued. The affidavit at issue, considered alone,
failed to provide a substantial basis to support a conclusion
that probable cause existed. Thus, the search warrant was
invalid. Because the blood test results obtained pursuant to the
warrant constitute evidence obtained in violation of MCL
780.653; MSA 28.1259(3), they must be excluded.

1. The Michigan Constitution provides that a search warrant
may be issued only on a showing of probable cause, supported
by oath or affirmation. MCL 780.651(1); MSA 28.1259(1)(1) and
MCL 780.653; MSA 28.1259(3) require that probable cause be
shown in the form of an affidavit presented to a magistrate who
will decide whether to issue a warrant on the basis of the
affidavit's contents. Reviewing courts must read search war-
rants and underlying affidavits in a common-sense and realistic

manner, and must pay deference to the magistrate's determination that probable cause existed. The reviewing court must ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause.

2. The courts must specifically focus on facts and circumstances that support the magistrate's probable cause determination, and may consider only those facts that were presented to the magistrate. Moreover, they must ensure that the magistrate's decision is based on actual facts, not merely unsupported conclusions of the affiant. At a minimum, a sufficient affidavit must present facts and circumstances on which a magistrate can rely to make an independent probable cause determination. In this case, the affidavit plainly failed to provide any basis to sustain a conclusion that probable cause existed.

3. When reviewing courts assess a magistrate's probable cause determination, they may not consider sworn, yet unrecorded, oral testimony, contemporaneous with an affidavit, that is offered to show probable cause. Requiring reviewing courts to consider such testimony would impose a significant and unnecessary burden on their ability to reliably assess whether the constitutional requirement for probable cause had been satisfied. Rather, additional facts relied on to find probable cause must be incorporated into an affidavit, i.e., they must be presented under oath and must be recorded. The recording may take various forms, including handwritten notes, video or audio tapes, or formal or informal transcripts of testimony. Because probable cause for the issuance of the search warrant in this case has not been established under MCL 780.653; MSA 28.1259(3), the search warrant was invalid, and the blood test results obtained pursuant to the warrant must be excluded.

Affirmed and remanded for further proceedings.

Justice BOYLE, joined by Justices RILEY and WEAVER, dissenting, stated:

The majority's holding is flawed because it results from a misapprehension of the proper focus of a probable cause determination in evaluating the validity of a search warrant. Where a warrant is based on a named source, and that source is a police officer, the source is presumptively reliable. Thus, the affidavit need only contain affirmative allegations that permit the magistrate to conclude that the source had personal knowledge of the facts alleged. In this case, under an appropriate analysis, the affidavit presented to the magistrate provided a basis to support a finding of probable cause to justify issuance

of the search warrant authorizing withdrawal of the defendant's blood for testing. The statements in the affidavit that the defendant had been operating a vehicle that was involved in a fatal accident shortly before the affidavit was presented to the magistrate and that the defendant appeared to be intoxicated provided adequate justification for the magistrate to conclude that evidence of intoxication would then be found in a sample of defendant's blood. That is all that is necessary to support a finding of probable cause.

Assuming arguendo that the written affidavit in the present case is defective, it should be permissible to supplement the affidavit with sworn, unrecorded, oral statements by the affiant. The Legislature meant the search warrant statutes to implement protections commensurate with, but no more stringent than, the Fourth Amendment, which numerous federal courts have held is satisfied by oral supplementation of a deficient affidavit.

Application of the exclusionary rule to any technical violation of the search warrant statute that may have occurred in the present case is unwarranted. The exclusionary rule is intended to serve a deterrent purpose, and loses any useful force and effect when applied to technical errors that do not rise to the level of negligent or wilful conduct, serving only to deprive the trier of fact of relevant and probative evidence. The swift reaction of the Legislature in amending the search warrant statute after the Supreme Court's decision in *People v Sherbine*, 421 Mich 502 (1984), evinces a repudiation of the view in *Sherbine* that evidence obtained in violation of the statute should be excluded.

206 Mich App 484; 522 NW2d 684 (1994) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the people.

*Thomas V. Wilhelm* for the defendant.

CAVANAGH, J. This is an interlocutory appeal arising from a denial of the defendant's motion to suppress blood test results obtained pursuant to a search warrant. The general issue is the establish-

ment of probable cause for search warrants under MCL 780.653; MSA 28.1259(3). The specific issue is one of first impression for Michigan: When a reviewing court assesses whether probable cause has been established for the issuance of a search warrant, may the reviewing court consider sworn, yet unrecorded, oral testimony that, in addition to an affidavit, was presented to the magistrate before he issued the warrant? We are also asked to determine whether the instant affidavit, considered alone, provided a substantial basis to support a conclusion that probable cause existed.

We hold that when a reviewing court assesses whether probable cause has been established for the issuance of a search warrant, the reviewing court may *not* consider sworn, yet unrecorded, oral testimony that, in addition to an affidavit, was presented to the magistrate before he issued the warrant. We also hold that the instant affidavit, considered alone, failed to provide a substantial basis to support a conclusion that probable cause existed.

Because we hold that probable cause was not established in this case under MCL 780.653; MSA 28.1259(3), we also conclude that the search warrant is invalid and that the blood test results obtained pursuant to the search warrant should be suppressed. The Court of Appeals decision is affirmed. 206 Mich App 484; 522 NW2d 684 (1994).

### I. FACTS AND PROCEEDINGS

To present the relevant facts and proceedings we borrow, in part, from the Court of Appeals opinion:

On March 13, 1993, defendant was involved in an automobile accident that resulted in a fatality.

Defendant and his passenger were injured and taken to the hospital. While at the hospital, a blood sample was drawn from defendant pursuant to a search warrant. The affidavit on which the warrant was based stated in pertinent part:

"On 3-13-93 on or about 11:40 P.M. (2340 hrs) Robert Leonard Sloan operating a vehicle in the City of Southgate in [the] area of Pennsylvania & Walter. Collision occurred & appears Robert Leonard Sloan under influence of intoxicating liquor, transported to Wyandotte Hospital & Medical Center. Request blood sample be taken. Robert Leonard Sloan involved in accident causing death."

Defendant was subsequently arrested and bound over on charges of manslaughter with a motor vehicle, MCL 750.321; MSA 28.553, operating a motor vehicle while under the influence of intoxicating liquor causing a death, MCL 257.625(4); MSA 9.2325(4), and felonious driving, MCL 752.191; MSA 28.661. In the trial court, defendant moved to suppress the results of the blood test, arguing that the affidavit was insufficient because it did not allege facts on which probable cause could be based. The trial court allowed the parties to take the testimony of the magistrate who issued the warrant to determine what facts the magistrate had relied upon in issuing the warrant. The magistrate testified that he had questioned the officer about defendant's condition. [206 Mich App 485-486.]

The magistrate stated:

I always question the witnesses regarding specificity of the charge; if there were any field sobriety tests, which I recall there were not because the person was injured and had been transferred to the hospital.

I inquired specifically as to the condition that led them to believe that drinking had been involved, specifically speech, and smell of intoxicants, condition of eyes. As I recall, he was in a condition that he was not able to speak. As I

recall, that there was a strong odor of intoxicants and his eyes, which were injured as I recall, were not an important factor as the, you know, whether they were glassy or not because I recall he received injuries.

And I believe, in addition to that, there were statements related to me, about him being the operator of the vehicle, from a passenger had been made to them [sic].

Also that there was, I believe it was a gallon or a half gallon of Jack Daniels in the vehicle itself.

The officer related to me that the investigating officer had felt that there had been drinking involved based upon the strong odor of intoxicants emanating from the mouth of Mr. Sloan.

And based upon those representations, I issued a warrant for the search and drawing of his blood.

At the suppression hearing, the affiant officer also testified regarding his recollections of what he had orally stated to the magistrate when he presented the application for the warrant. The officer testified that he had told the magistrate that there had been evidence of the smell of intoxicants and slurred speech. In pertinent part, the officer stated:

*Q.* Tell us what you remember.

*A.* The Judge swore me in; asked me did the subject appear to have a strong odor of intoxicants, slurred speech, and that's all I can recall. Those are the two questions I can recall.

*Q.* How did you answer those questions?

*A.* Yes, he did. I answered yes—affirmative to both questions.

\* \* \*

*Q.* So you told the Judge that there was evidence of the smell of intoxicants and slurred speech?

*A.* Yes, sir.

The Court of Appeals continued:

The trial court noted that the procedure used in this case, where the warrant was issued after the magistrate read the affidavit and questioned the officer, under oath, followed by the trial court's taking testimony of the magistrate, was not ideal. However, the trial court denied defendant's motion to suppress the blood test results. [206 Mich App 486.]

The Court of Appeals reversed, holding that the trial court "was not justified in relying on the magistrate's after-the-fact testimony regarding off-the-record statements in reaching the conclusion that the factual basis for the warrant was sufficient." 206 Mich App 487. The Court concluded that the affidavit failed to establish probable cause, and consequently, that the search warrant was invalid and that the blood test results should have been excluded.

This Court granted the prosecutor leave to appeal. 448 Mich 851 (1995). We now affirm the Court of Appeals decision.

## II. SUFFICIENCY OF AFFIDAVIT

The Michigan Constitution provides that a search warrant[1] may issue only on a showing of

---

[1] As indicated, the general issue before the Court is probable cause determinations for search warrants. The dissent, in dicta, indicates that "a seizure of blood without a warrant incident to an arrest on probable cause" is permissible under the Fourth Amendment. *Post* at 188. We note that that description is an unduly narrow interpretation of what the United States Supreme Court has said on the subject. In *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), the United States Supreme Court indicated that a defendant could be compelled against his will to have his blood tested for alcohol content only where three conditions had been met: (1) the defendant had been lawfully arrested before the taking of blood, (2) at the time the sample was taken there was a "clear indication" that the sample would disclose relevant evidence, and (3) exigent circumstances were shown to exist.

It does not appear that all these conditions were met in this case.

probable cause, supported by oath or affirmation.

> The person, houses, papers and possessions of
> every person shall be secure from unreasonable
> searches and seizures. No warrant to search any
> place or to seize any person or things shall issue
> without describing them, nor without probable
> cause, supported by oath or affirmation. [Const
> 1963, art 1, § 11.]

Implementing this constitutional mandate, MCL
780.651(1); MSA 28.1259(1)(1) and MCL 780.653;
MSA 28.1259(3) require that probable cause be
shown in the form of an affidavit presented to a
magistrate who will decide whether to issue a
warrant on the basis of the affidavit's contents.

> *When an affidavit is made on oath to a magis-*
> *trate* authorized to issue warrants in criminal
> cases, and *the affidavit establishes grounds for*
> *issuing a warrant pursuant to this act,* the magis-
> trate, if he or she is satisfied that there is probable
> cause for the search, shall issue a warrant to
> search the house, building, or other location or
> place where the property or thing to be searched
> for and seized is situated. [MCL 780.651(1); MSA
> 28.1259(1)(1) (emphasis added).]

> *The magistrate's findings of reasonable or proba-*
> *ble cause shall be based on all the facts related*

---

The record indicates that the defendant was not arrested until after
the blood was taken. The record before us does not confirm that there
was probable cause to arrest or that there was a "clear indication"
that relevant evidence would be obtained, and it would be improper
for this Court to decide these issues without, at a minimum, further
briefing from the parties. Finally, it would be difficult to convincingly
argue that the officer in this case "might reasonably have believed he
was confronted with an emergency, in which the delay necessary to
obtain a warrant, under the circumstances, threatened the destruc-
tion of evidence," *Schmerber, supra* at 770, because the officer in fact
pursued getting a warrant.

*within the affidavit made before him or her.*[2]
[MCL 780.653; MSA 28.1259(3) (emphasis added).]

When reviewing courts assess a magistrate's conclusion that probable cause to search existed, such courts apply the standard of review set forth in *People v Russo,* 439 Mich 584; 487 NW2d 698 (1992). The standard instructs reviewing courts that "a search warrant and the underlying affidavit are to be read in a common-sense and realistic manner." *Id.* at 604. Reviewing courts must also pay deference to a magistrate's determination that probable cause existed. This deference "requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *Id.* at 603, quoting *Illinois v Gates,* 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

When reviewing courts apply the standard from *Russo,* they must specifically focus on facts and circumstances that support the magistrate's probable cause determination. Reviewing courts may consider only those facts that were presented to the magistrate. *Aguilar v Texas,* 378 US 108, 112; 84 S Ct 1509; 12 L Ed 2d 723 (1964). Moreover, reviewing courts must ensure that the magistrate's decision is based on actual facts—not merely the

---

[2] The remaining portion of MCL 780.653; MSA 28.1259(3) provides:

The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:

(a) If the person is named, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information.

(b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

conclusions of the affiant. One of the main purposes of the warrant application procedure is to have a neutral and detached magistrate determine whether probable cause exists. This purpose cannot be achieved if the magistrate simply adopts unsupported conclusions of the affiant. Accordingly, at a minimum, a sufficient affidavit must present facts and circumstances on which a magistrate can rely to make an independent probable cause determination.

These concepts are well established throughout Michigan case law. In *People v Effelberg,* 220 Mich 528, 531; 190 NW 727 (1922), we explained:

> It was not for [the affiant] but for the magistrate to determine whether there was probable cause to justify issuing the search warrant. His statements are his conclusions and have no more force than if expressly stated on information and belief. Affiant should have stated to the magistrate on oath or affirmation the facts and circumstances, if any were known to him, which induced the beliefs and the conclusions stated.

Similarly, in *People v Rosborough,* 387 Mich 183, 199; 195 NW2d 255 (1972), we emphasized:

> "The affidavit must contain facts within the knowledge of the affiant, as distinguished from mere conclusions or belief. An affidavit made on information and belief is not sufficient. The affidavit should clearly set forth the facts and circumstances within the knowledge of the person making it, which constitute the grounds of the application. The facts should be stated by distinct averments, and must be such as in law would make out a cause of complaint. *It is not for the affiant to draw his own inferences. He must state matters which justify the drawing of them.*" [Quoting 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 868, p 1129. (Emphasis in original.) Accord

*People v Sherbine,* 421 Mich 502, 511, n 16; 364
NW2d 658 (1984); *People v Warner,* 221 Mich 657,
659; 192 NW 566 (1923); *People v Knopka,* 220
Mich 540, 544; 190 NW 731 (1922); *People v Landt,*
188 Mich App 234, 241; 469 NW2d 37 (1991), rev'd
on other grounds 439 Mich 870; 475 NW2d 825
(1991); *People v Zoder,* 15 Mich App 118; 166
NW2d 289 (1968).][3]

In *Zoder,* the Court of Appeals explained that a
magistrate abdicates his judicial function regard-
ing search warrants when he only accepts the
affiant's conclusory statements:

> The vice of stating a "mere conclusion" and in
> failing to state the underlying circumstances upon
> which the conclusion is based is that without a
> statement of underlying circumstances the magis-
> trate must accept the inferences drawn by the
> affiant rather than make his own independent
> evaluation. [*Zoder* at 121.]

When presented with affidavits that wholly con-
sist of the affiant's unjustified assertions or infer-
ences, Michigan reviewing courts have consistently
held that the affidavit is fatally deficient because it
could not provide any basis to support a magis-
trate's conclusion that there was probable cause to

---

[3] Likewise, the United States Supreme Court has explicitly recog-
nized that probable cause determinations must be based on facts and
circumstances:

> "Under the Fourth Amendment, an officer may not properly
> issue a warrant to search a private dwelling unless he can find
> probable cause therefor from *facts or circumstances* presented
> to him under oath or affirmation. Mere affirmance of belief or
> suspicion is not enough." [*Aguilar v Texas, supra* at 112,
> quoting *Nathanson v United States,* 290 US 41, 47; 54 S Ct 11;
> 78 L Ed 159 (1933) (emphasis in original).]

search. See *Sherbine, Rosborough, Knopka, Effelberg, Landt,* and *Zoder.*

Applying these principles to the instant affidavit, we find that the affidavit plainly failed to provide any basis to sustain a conclusion that probable cause existed. The affidavit states: "appears Robert Leonard Sloan under influence of intoxicating liquor . . . ." We consider this statement to be a mere conclusion or opinion of the affiant. The affidavit does not include any facts to support this conclusion or opinion. Without such facts, it would be impossible for the magistrate to have independently concluded that there was probable cause to search.[4] In sum, we hold that the

---

[4] We agree with the dissent that a police officer is a "presumptively reliable source," *post* at 191, and that magistrates are entitled to give relatively more weight to information supplied by an officer as opposed to information supplied by a layperson. However, we differ with the dissent insofar as it effectively ignores the legal principle that, ultimately, search warrants may issue only upon a *magistrate's*—not an officer's—probable cause determination. If magistrates are to fulfill their judicial obligation to independently determine that there is probable cause to search, the magistrates cannot give dispositive weight to an officer's conclusory observation, or opinion. To reiterate, there must be facts or circumstances that provide a basis for magistrates to conclude that there is probable cause to search; mere affirmance of a conclusory observation is not enough.

The information related in the instant affidavit, combined with appropriate deference given because the affiant was an officer, simply failed to provide the magistrate with a factual basis for making an independent determination that probable cause existed. The information in the affidavit is no more illuminating than if the officer had said it "appears Robert Leonard Sloan to have been operating a motor vehicle while under the influence of intoxicating liquor causing a death pursuant to MCL 257.625(4); MSA 9.2325(4)." For the same reason that that mere conclusion of criminal activity would need further facts and circumstances to enable a magistrate to independently find probable cause, the summary observations in the instant affidavit required further factual support. The deficiency in the instant affidavit is made plain by the fact that the magistrate felt compelled to make further inquiries regarding relevant facts and circumstances before making his probable cause determination. Contrary to the dissent's contention, the magistrate obviously did not regard the orally related facts gained from these inquiries as "needless supporting details" (*post* at 202): the magistrate's testimony at the supplemental hearing suggested that the magistrate relied on the orally related facts to find probable cause.

affidavit failed to provide a substantial basis to support a conclusion that probable cause existed.[5]

### III. SUPPLEMENTATION OF AFFIDAVIT WITH SWORN YET UNRECORDED TESTIMONY

The prosecutor argues that a substantial basis for the magistrate's conclusion that probable cause existed can be identified when the affidavit is considered in conjunction with the affiant's sworn, yet unrecorded, testimony that the affiant presented to the magistrate contemporaneously with the affidavit. Specifically, the prosecutor insists that the affiant's sworn, yet unrecorded, testimony provides the facts and circumstances to support the conclusion in the affidavit that "Robert Leonard Sloan [appears] under influence of intoxicating liquor . . . ."

To evaluate the prosecutor's argument we must first decide whether reviewing courts may rely on such sworn, yet unrecorded, oral statements when assessing a magistrate's probable cause determination. As indicated, this is an issue of first impression for Michigan.[6] We hold that when reviewing

---

[5] In addition to this deficiency, we note that the affidavit also violated MCL 780.653; MSA 28.1259(3) provisions regarding informants. See note 2. According to the record, the affiant received the information that he related in the affidavit from an officer who was present at the accident scene and who conveyed the information to the affiant through a radio transmission. Because the information in the affidavit was not based on the affiant's personal knowledge, the affiant should have adhered to the requirements for informants set out in MCL 780.653(a) and (b); MSA 28.1259(3)(a) and (b). The affiant erred when he altogether omitted any indication in the affidavit that the information that he presented in the affidavit actually had been supplied by another person.

[6] Contrary to the defendant's contention, the precise issue here was not presented in People v Warner, supra. In Warner, we held that the affiant could not later supplement the affidavit with facts and circumstances that were known to the affiant but were not included within the affidavit. However, the factual summary in Warner did not disclose whether the additional facts and circumstances had been

courts assess a magistrate's probable cause deter-
mination, they may *not* consider sworn, yet unre-
corded, oral testimony that, contemporaneous with
an affidavit, is offered to the magistrate to show
probable cause. Our primary reason for so holding
is our belief that requiring reviewing courts to
consider sworn, yet unrecorded, oral testimony
would impose a significant and unnecessary bur-
den on their ability to reliably assess whether the
constitutional requirement for probable cause had
been satisfied.

Requiring reviewing courts to consider sworn,
yet unrecorded, oral testimony would exact a sig-
nificant burden on such courts because of the
evidentiary risks inherent in the procedure. If
reviewing courts had to test probable cause deter-
minations on the basis of sworn, yet unrecorded,
oral testimony, such courts would be forced to
regularly conduct supplemental hearings in order
to develop a record of the sworn, yet unrecorded,
oral testimony that was allegedly conveyed to the
magistrate. The magistrate and the affiant would
have to testify regarding their recollections of
what was purportedly said at the time that the
warrant was sought, and the magistrate would
have to be able to explain which statements he
relied on to determine that probable cause existed.
What is problematic about this procedure is that,
with the passage of time, the memories of the
affiant and the magistrate may become faded and
confused. Given those types of risks, the possibility
for intentionally untruthful recollections also
arises.

We find that the constitutional probable cause
requirement is simply too important to be sub-
jected to such evidentiary hazards—particularly

presented to the magistrate, and, if they were, the manner in which
they were presented, i.e., sworn or unsworn, recorded or unrecorded.

when such hazards easily could be avoided by a requirement that any additional needed facts be incorporated into an affidavit.[7] In this regard, we agree with the view expressed by Justices Brennan and Marshall of the United States Supreme Court when they highlighted the difficulties inherent in a procedure that allows probable cause determinations to be based on sworn, yet unrecorded, oral testimony:

> The substantive right created by the requirement of probable cause is hardly accorded full sweep without an effective procedural means of assuring meaningful review of a determination by the issuing magistrate of the existence of probable cause. Reliance on a record prepared after the fact involves a hazard of impairment of that right. It is for this reason that some States have imposed the requirement of a contemporaneous record. . . .
>
> "It is an anomaly in judicial procedure to attempt to review the judicial act of a magistrate issuing a search warrant upon a record made up wholly or partially by oral testimony taken in the reviewing court long after the search warrant was issued. Judicial action must be reviewed upon the record made at or before the time that the judicial act was performed. The validity of judicial action cannot be made to depend upon the facts recalled by fallible human memory at a time somewhat removed from that when the judicial determination was made. This record of the facts presented to the magistrate need take no particular form. The record may consist of the sworn complaint, of affidavits, or of sworn testimony taken in shorthand and later filed . . . . The essential thing is

---

[7] We recognize that in a trial witnesses are asked to recall prior statements all the time when testifying and, thus, the risk for imprecise memories exists in that context as well. However, the search warrant situation is different, in that the magistrate or affiant has a realistic opportunity to memorialize statements in a sworn recording at the time the statements are first made. Hence, the risk of inaccurate memories in the search warrant situation does not have to exist and could be eliminated. See discussion below at 175-177.

that proof be reduced to permanent form and made a part of the record which may be transmitted to the reviewing court." [*Christofferson v Washington,* 393 US 1090, 1090-1091; 89 S Ct 855; 23 L Ed 2d 234 (1969) (Brennan, J., dissenting from the Court's denial of certiorari), quoting *Glodowski v State,* 196 Wis 265, 271-272; 220 NW 227 (1928).]

The evidentiary problems that arise when reviewing courts have to rely on testimony after the fact concerning statements off the record about facts allegedly showing probable cause are different in kind from any evidentiary problems that may arise in connection with the supplementation procedure we sanctioned in *People v Mitchell,* 428 Mich 364; 408 NW2d 798 (1987). In *Mitchell,* the affiant had not signed the affidavit, and while finding that this error made the search warrant presumably invalid, we decided to allow a supplemental hearing at which a magistrate could testify regarding whether the affiant had taken an oath when the affidavit was presented. The basic difference between the supplemental hearing authorized in *Mitchell* with the type of supplemental hearing that occurred in this case lies in the nature of the testimony sought to be developed during the hearings.

Specifically, the type of testimony sought in the *Mitchell* situation is much less complicated than the type of testimony sought in hearings concerned with oral statements about facts and circumstances offered to show probable cause. Clearly, the risk of faded or confused memories is slight when the sole inquiry at the hearing is whether an affidavit was presented under oath. In contrast, the risk of faded or confused memories is much greater when the inquiries at the hearing consist of the development of numerous facts and

circumstances needed to establish that probable cause to search existed at the time that the warrant was sought. In addition, the testimony sought in the latter hearing would be used to supplement the content of the affidavit, and would be used to verify the basis of the probable cause determination, thereby making the risk of flawed memories in that context all the more significant. Because of the significant evidentiary problems, we will not approve using a *Mitchell*-type remand to rehabilitate an affidavit that is deficient because it fails to include sufficient facts and circumstances evidencing probable cause.

The present case illustrates the dangers inherent in allowing a magistrate to base his determinations of probable cause on oral statements not embodied in the affidavit. When the magistrate's testimony from the supplemental hearing is compared with the officer's testimony from the same hearing, a discrepancy emerges regarding whether the officer told the magistrate that the defendant was actually slurring his speech. The officer twice acknowledged that he had "told the Judge that there was evidence of the smell of intoxicants and slurred speech." However, a fair reading of the magistrate's testimony indicates that the defendant's injuries from the accident rendered him physically unable to talk. The magistrate testified at the hearing: "As I recall, he was in a condition that he was not able to speak."

Further confusion exists concerning the magistrate's reference at the hearing to evidence of a bottle of Jack Daniels being present in the defendant's vehicle at the time of the accident. The magistrate testified that his probable cause determination was based in part on the affiant's oral

representation that there was "a gallon or half gallon of Jack Daniels in the vehicle itself." The problem with this portion of the magistrate's testimony is that the first time that evidence of a bottle of Jack Daniels was discussed was at the preliminary hearing that occurred *after* the magistrate issued the warrant and in front of the same magistrate who issued the warrant. These inconsistencies in the brief testimony taken at the instant hearing demonstrate the very real burden reviewing courts would have to face in order to reliably assess a probable cause determination that is based on sworn, yet unrecorded, statements.

We regard as significant the fact that these evidentiary hazards easily could be averted if reviewing courts were limited to the permanent record of sworn evidence presented to a magistrate at the time that the warrant is requested. If a magistrate determines that an affidavit is insufficient to establish probable cause, the magistrate is free to probe the affiant concerning additional facts that might show that probable cause exists. We want to make clear that we encourage such conscientious and thorough investigations on the part of a magistrate. However, in order to ensure that a reviewing court will have a trustworthy basis to assess whether the additional facts establish probable cause, we hold that any additional facts relied on to find probable cause must be incorporated into an affidavit. Stated otherwise, the additional facts must be presented under oath and must be recorded.[8] The recording may take various forms, including handwritten notes, video-

___

[8] An affidavit is defined as: "A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." Black's Law Dictionary (6th ed), p 58.

or audiotapes, or formal or informal transcripts of testimony.[9]

What is critical is that the additional information be presented under oath and simultaneously made a permanent part of the record. When these steps are taken, reviewing courts will have the ability to meaningfully assess the probable cause determination and without the needless risk of confused or faded memories coming into play. We further note that having a permanent and sworn record of the submitted evidence will facilitate the magistrate's preliminary inquiry regarding whether probable cause existed. Relying on such a record, a magistrate could better "judge for himself the persuasiveness of the precise facts relied on to show probable cause . . . ." *United States v Anderson,* 453 F2d 174, 177 (CA 9, 1971).

A requirement that additional information be incorporated into the affidavit would cause only minimal inconvenience for the magistrate and the affiant. While time may be of the essence in many warrant situations, we believe that there would always be enough time to correct and enlarge an affidavit with needed additional facts. As mentioned, handwritten notes made on the face of the affidavit and attested by the affiant would be a satisfactory method of incorporation. Because of the ease with which the incorporation could be accomplished, we conclude that the evidentiary hazards associated with sworn, yet unrecorded, statements are completely unnecessary and can be effectively avoided in the search warrant context.

In contrast to the minimal inconvenience associ-

---

[9] For example, this Court commends the procedure used in *Naples v Maxwell,* 271 F Supp 850 (SD Ohio, 1967), rev'd on other grounds 393 F2d 615 (CA 6, 1968), in which the magistrate, after eliciting additional necessary information from the requesting officer by oral testimony, appended the transcript of testimony regarding the affidavit before its execution on oath by the officer.

ated with an incorporation into the affidavit pro-
cedure, a procedure under which probable cause
determinations could be based on sworn, yet unre-
corded, oral testimony would result in greater
hardships and further problems. For example, the
latter procedure would put a significant strain on
judicial resources: more than likely, every time an
affidavit failed to set forth adequate facts and
circumstances to establish probable cause, review-
ing courts would have to hold supplemental hear-
ings to determine whether any oral testimony
relied on by the magistrate was sufficient to show
probable cause. Moreover, allowing sworn, yet un-
recorded, oral testimony to rehabilitate a deficient
affidavit would undermine Michigan's firmly estab-
lished affidavit requirement for warrants. That
subversion in turn would encourage sloppy police
work when it came to gathering facts and circum-
stances to show probable cause to search. To avoid
these types of undesirable results, we disavow
procedures that would allow reviewing courts to
rely on sworn, yet unrecorded, oral statements to
assess a magistrate's probable cause determina-
tion.

Our position regarding sworn, yet unrecorded,
oral testimony allegedly showing probable cause
finds support in the approach taken by federal
courts asked to review the validity of federal
search warrants[10] in light of the Fourth Amend-
ment and FR Crim P 41(c). The Fourth Amend-
ment is similar to the Michigan Constitution's
search and seizure provision[11] insofar as both man-
date that warrants issue only on a showing of

[10] By "federal search warrants," we mean to refer to warrants
issued on the request of a federal law enforcement officer or an
attorney for the government. See FR Crim P 41(a).

[11] Const 1963, art 1, § 11. For the text of the provision, see *ante* at
167.

probable cause based on oath or affirmation. In pertinent part, the Fourth Amendment provides:

> [N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

Before 1972, FR Crim P 41(c) was similar to MCL 780.653; MSA 28.1259(3),[12] in that both required an affidavit showing the facts and circumstances to support a probable cause determination. Specifically, FR Crim P 41(c) provided:

> A warrant shall issue *only on affidavit* sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant . . . . [FR Crim P 41(c) (emphasis added).]

When federal courts assessed the validity of a search warrant in light of these particular federal requirements, the majority consistently supported the view that "all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v Anderson* at 175. Accord *United States v Williams,* 977 F2d 866 (CA 4, 1992), *United States v Massey,* 687 F2d 1348 (CA 10, 1982), *United States v Hatcher,* 473 F2d 321 (CA 6, 1973), *United States v Sterling,* 369 F2d 799 (CA 3, 1966), *Rosencranz v United States,* 356 F2d 310 (CA 1, 1966), and

---

[12] For the text of MCL 780.653; MSA 28.1259(3) see *ante* at 167-168.

*United States v Freeman,* 358 F2d 459 (CA 2, 1966).[13]

Our approach to sworn, yet unrecorded, testimony in connection with search warrants finds further support in the amended post-1972 version of FR Crim P 41(c). In addition to the pre-1972 affidavit requirement, amended rule 41(c) now mandates that the following procedure be adhered to when oral statements are presented:

> Before ruling on a request for a warrant the [judicial officer] may require the affiant to appear personally and may examine under oath the affiant . . ., *provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.* [FR Crim P 41(c)(1) (emphasis added).][14]

We acknowledge that when federal courts have been asked to review the validity of *state search warrants*[15] under federal constitutional law, the majority has allowed probable cause determinations to be based on sworn, yet unrecorded, oral testimony presented to the magistrate at the time that the warrant was sought. See, i.e., *United States v Clyburn,* 24 F3d 613 (CA 4, 1994), *United States v Shields,* 978 F2d 943 (CA 6, 1992), *United States ex rel Gaugler v Brierley,* 477 F2d 516 (CA 3, 1973), *Frazier v Roberts,* 441 F2d 1224 (CA 8,

---

[13] Contra *United States v Hill,* 500 F2d 315 (CA 5, 1974), *United States v Beasley,* 485 F2d 60 (CA 10, 1973), and *United States v Marihart,* 472 F2d 809 (CA 8, 1972). See also anno: *Federal court determination of probable cause for search warrant: Consideration of oral testimony which was, in addition to affidavit, before officer who issued warrant,* 24 ALR Fed 107.

[14] The amended rule is designed "to insure an adequate basis for determining the sufficiency of the evidentiary grounds for the issuance of the search warrant if that question should later arise." Notes of Advisory Committee on 1972 Amendment to Rule 41.

[15] By "state search warrants" we mean to refer to warrants requested by a nonfederal officer.

1971), and *Sherrick v Eyman,* 389 F2d 648 (CA 9, 1968). In such cases, the criteria governing the legality of the state warrant was limited to the Fourth Amendment.[16] The standard reason employed by these courts to support a reliance on sworn, yet unrecorded, oral statements was that the literal language of the Fourth Amendment does not require that the basis for probable cause be established in a writing. Significantly, however, when federal courts applied that reasoning they also consistently indicated that the far more preferable procedure for securing search warrants is to present written affidavits. See *Clyburn* at 618, *United States v Lynch,* 699 F2d 839 (CA 7, 1983), *United States ex rel Gaugler* at 519, *Frazier* at 1229, and *Sherrick* at 653.

The preferable procedure is easily accomplished in Michigan because of the well-settled practice of requiring that probable cause be demonstrated in an affidavit. See MCL 780.651(1); MSA 28.1259(1)(1) and MCL 780.653; MSA 28.1259(3). This Court has recognized that the purpose of Michigan's affidavit requirement is "to provide for review of the magistrate's determination of probable cause." *Knopka* at 543. To guarantee the most meaningful review possible under Michigan's particular warrant procedure, we are persuaded that a reviewing court's assessment of the magistrate's probable cause determination should be limited to the facts and circumstances set forth in the affidavit.

Having determined that the affidavit failed to set forth facts and circumstances to justify a finding of probable cause, and having also decided that reviewing courts may not consider sworn, yet un-

---

[16] The Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers, but ultimately used in a federal proceeding. *Clyburn* at 616, *Shields* at 945, *United States ex rel Gaugler* at 520, 523, and *Frazier* at 1228, n 6.

recorded, oral testimony presented to a magistrate when assessing the magistrate's probable cause determination, we conclude that probable cause for the issuance of the instant search warrant has not been established under MCL 780.653; MSA 28.1259(3).[17]

In *Sherbine,* we held that evidence obtained specifically in violation of MCL 780.653; MSA 28.1259(3) must be excluded. The Legislature appears to have acquiesced in this particular construction of MCL 780.653; MSA 28.1259(3). While the Legislature subsequently amended MCL 780.653; MSA 28.1259(3) because it disagreed with portions of our statutory analysis provided in *Sherbine,* it is significant that the Legislature when instituting such amendments did not alter our holding that evidence obtained in violation of the statute must be excluded. To change the law in that regard would have been an easy and convenient task for the Legislature. Neither the language in the amendments, nor the legislative history pertinent to the amendments provide a

---

[17] Having determined that probable cause was not established under MCL 780.653; MSA 28.1259(3), we need not decide whether the magistrate's probable cause determination was constitutionally defective under Const 1963, art 1, § 11.

We also point out that, contrary to the implicit suggestion in part II(A) of the dissenting opinion, Michigan's search warrant statutes do demonstrate that the Legislature has imposed some requirements for search warrant applications beyond those that are constitutionally required—in particular, a requirement that a "magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the *affidavit* made before him or her." MCL 780.653; MSA 28.1259(3). Neither Const 1963, art 1, § 11, nor the Fourth Amendment, require that probable cause be established in an affidavit. Nonetheless, the affidavit requirement represents a well-established and beneficial practice under Michigan law. To permit magistrates to make probable cause determinations on the basis of sworn, yet unrecorded, oral testimony would essentially render the affidavit requirement meaningless. Moreover, and as indicated above, allowing magistrates to engage in such a practice would make it very difficult for reviewing courts to assess a magistrate's probable cause determination in a manner that is reliable.

basis for concluding that a sanction other than exclusion is appropriate for the violation of MCL 780.653; MSA 28.1259(3). Clearly, the Legislature shares our view that no remedy other than exclusion is as likely to assure the full enforcement of all the requirements under MCL 780.653; MSA 28.1259(3)—a statute specifically designed by the Legislature to implement the constitutional mandate for probable cause under Const 1963, art 1, § 11.[18]

Because the blood test result procured pursuant to the instant search warrant[19] constitutes evidence obtained in violation of MCL 780.653; MSA 28.1259(3), we conclude that it must be excluded.

The decision of the Court of Appeals is affirmed, and the case is remanded for proceedings in accordance with this opinion.

BRICKLEY, C.J., and LEVIN and MALLETT, JJ., concurred with CAVANAGH, J.

BOYLE, J. I respectfully dissent from the majority's decision to bar introduction of highly probative evidence of the defendant's intoxication[1] at

---

[18] Hence, the exclusion sanction does "serve[ ] a valid and useful purpose." (" 'Before we penalize police error, . . . we must consider whether the sanction serves a valid and useful purpose.' " *Post* at 200.) Moreover, excluding evidence obtained in violation of a statute is not a new phenomenon under Michigan law. See *McNitt v Citco Drilling Co*, 397 Mich 384, 393; 245 NW2d 18 (1976), *People v Dixon*, 392 Mich 691; 222 NW2d 749 (1974), and *People v Weaver*, 74 Mich App 53; 253 NW2d 359 (1977).

[19] The record before us suggests that there may have been *two* blood tests conducted on the defendant, the first test showing a blood alcohol content of 0.30, and a second, later test showing a blood alcohol content of 0.19. If either test was conducted only *"for medical treatment,"* the result from that test may be admissible provided all other requirements under MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e) can be satisfied.

[1] As the majority notes, *ante* at 184, n 19 (CAVANAGH, J.), the record suggests that defendant had a blood-alcohol content of 0.30 percent shortly after the accident, and continued to have a blood-

trial on charges of manslaughter with a motor vehicle, MCL 750.321; MSA 28.553, operating a motor vehicle while under the influence of intoxicating liquor causing death, MCL 257.625(4); MSA 9.2325(4), and felonious driving, MCL 752.191; MSA 28.661. The majority's holding is flawed because it results from a misapprehension of the proper focus of a probable cause determination in evaluating the validity of a search warrant. Further, by applying case law that deals with warrants based on information supplied by unnamed sources, the majority erroneously obscures the principle contained in both federal law and state statute. If the source is named and is a police officer, the source is presumptively reliable. Thus, the affidavit need only contain affirmative allegations that permit the magistrate to conclude that the source had personal knowledge of the facts alleged. As Professor LaFave describes the relevant inquiry, it includes four ingredients—time, crime, objects, and place—and requires a sufficient nexus between criminal activity, the thing to be seized, and the place to be searched. 2 LaFave, Search & Seizure (2d ed), § 4.5(a), p 214.

The probable cause issue is not whether defendant was drunk, but whether it is reasonable to assume if defendant was drunk, his blood would contain evidence of that fact. Affidavits, for example, typically offer the conclusory statement that appellant is suspected of drug dealing and the question is whether there is probable cause that the place to be searched will yield evidence of such activity. See 2 LaFave, *supra,* § 4.1(d), pp 127-139. By requiring law enforcement officers to justify

alcohol content of 0.19 percent approximately four and one-half hours after the accident. Both test results demonstrate a blood-alcohol content significantly above the 0.10 level, which gives rise to a presumption that the defendant was under the influence of intoxicating liquor. MCL 257.625a; MSA 9.2325(1).

their observations that persons appear to be intoxicated, the majority questions both the veracity and experience of police officers and gives a cramped construction of their ability to evaluate whether a person appears to be intoxicated.

Under an appropriate analysis, the affidavit presented to the magistrate provided a basis to support a finding of probable cause to justify issuance of the search warrant authorizing withdrawal of the defendant's blood for testing. The statements in the affidavit that the defendant had been operating a vehicle that was involved in a fatal accident shortly before the affidavit was presented to the magistrate and that the defendant appeared to be intoxicated provided adequate justification for the magistrate to conclude that evidence of intoxication would then be found in a sample of defendant's blood. That is all that is necessary to support a finding of probable cause. Although in my view the affidavit was satisfactory, I would also find that the Fourth Amendment permits supplementation of a deficient affidavit by sworn, unrecorded, oral testimony. Finally, I find no support for the conclusion that the Legislature intends exclusion of evidence in this situation.

I

A

The affidavit in this case was not deficient. MCL 780.651(1); MSA 28.1259(1)(1) directs an authorized magistrate to issue a warrant sanctioning a search requested through an affidavit made on oath, if the magistrate is satisfied that there is reasonable or probable cause supporting the grounds stated to justify the search.[2] MCL 780.653; MSA 28.1259(3)

___

[2] When an affidavit is made on oath to a magistrate authorized

explains further that "[t]he magistrate's finding of
reasonable or probable cause shall be based upon
all the facts related within the affidavit made
before him or her." These statutes do no more
than put into action state constitutional edicts
protecting against unreasonable searches and sei-
zures.[3] The Michigan Constitution, in turn, pro-
vides the same protection as the Fourth Amend-
ment of the United States Constitution, absent
"compelling reason[s]." See, e.g., *People v Smith,*
420 Mich 1, 20; 360 NW2d 841 (1984); *People v
Nash,* 418 Mich 196, 214; 341 NW2d 439 (1983)
(BRICKLEY, J.). The taking of blood after an arrest
without a warrant, even without a defendant's
consent, does not offend due process, *Breithaupt v
Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448
(1957), nor the Fourth Amendment, *Schmerber v
California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d
908 (1966).

We have held that the removal of blood for
testing presents no compelling reason to afford
greater protection under the Michigan Constitu-
tion than under the Fourth Amendment. *People v
Perlos,* 436 Mich 305, 313, n 7; 462 NW2d 310
(1990). We have also held that the language of the

---

to issue warrants in criminal cases, and the affidavit establishes
grounds for issuing a warrant pursuant to this act, the magis-
trate, if he or she is satisfied that there is probable cause for
the search, shall issue a warrant to search the house, building,
or other location or place where the property or thing to be
searched for and seized is situated. [MCL 780.651(1); MSA
28.1259(1)(1).]

[3] In pertinent part, Const 1963, art 1, § 11 states:

The person, houses, papers and possessions of every person
shall be secure from unreasonable searches and seizures. No
warrant to search any place or to seize any person or things
shall issue without describing them, nor without probable
cause, supported by oath or affirmation.

antiexclusionary clause of art 1, § 11, of the Michigan Constitution "clearly indicates that the people of Michigan had no intention of imposing more stringent restrictions upon law enforcement than is mandated by the Fourth Amendment." *People v Collins,* 438 Mich 8, 32-33; 475 NW2d 684 (1991).

The Legislature has repudiated attempts by this Court to interpret MCL 780.653; MSA 28.1259(3) to impose additional requirements supplementing constitutional search and seizure protections. *Collins, supra* at 13, n 7 (noting that *People v Sherbine,* 421 Mich 502; 364 NW2d 658 [1984], had been superseded by statute); see also *People v Powell,* 201 Mich App 516, 524-527; 506 NW2d 894 (1993) (CORRIGAN, P.J.). It should follow that if seizure does not offend the Fourth Amendment or the constitution of this state, this Court should implement the will of the people in aid of enforcement of the law. Given that expression of the people's will, it should be presumed that the Legislature does not intend to forbid what the Fourth Amendment would permit. There is no constitutional impediment to taking the blood of an intoxicated person arrested on probable cause without a warrant, even over objection. *Schmerber, supra.* Moreover, repeated legislative amendments of the drunk driving laws are persuasive evidence of the legislative commitment to the use of blood-alcohol evidence in enforcement of these laws. The Legislature's reaction to this Court's restrictive interpretation of statutes that would preclude the location and use of such evidence could not be more clear. See *People v Pittinger,* 105 Mich App 736, 743, n 1; 307 NW2d 715 (1981). Nevertheless, although it is anomalous to look to authority defining the quantum of probable cause required by the Fourth Amendment for search warrants when the Fourth Amendment would permit a

seizure of blood without a warrant incident to an arrest on probable cause,[4] because the issue presented is framed as the sufficiency of the affidavit, we look to precedent in that area.

We have agreed that the Fourth Amendment requires no more of a magistrate than a substantial basis that a search would uncover evidence of wrongdoing, and that the magistrate's determination is entitled to great deference. *People v Russo,* 439 Mich 584, 604-607; 487 NW2d 698 (1992). "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v Gates,* 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983) (citations omitted). See also *Russo, supra* at 603-604. In reviewing an affidavit requesting a search warrant, a magistrate determines if the facts and circumstances presented demonstrate that it is likely that the affiant will find (1) seizable evidence of criminal conduct, (2) in the place to be searched. In the present case, the question for the magistrate was whether the facts attested to by the police officer made it probable that (1) evidence relevant to defendant's criminal operation of a vehicle involved in a fatal accident, (2) could be found in the blood sought to be withdrawn. Our role as a reviewing court is simply to determine if there was a substantial basis for the magistrate's conclusion. *Russo, supra* at 604.

B

The majority errs because it fails to consider whether the facts and circumstances stated in the affidavit provide a substantial basis for the magis-

---

[4] I would hold that the evidence in the present case providing probable cause to search would also be sufficient to provide probable cause to arrest the defendant.

trate's conclusion that the evidence sought was likely to be found in the place searched. The majority instead focuses on whether the affidavit provides an independent basis for assessing the reliability of the facts and circumstances stated, by requiring notation of specific observations made by the affiant, or persons upon whose information the affiant is relying. This additional level of proof is not required by the constitutional protections against searches without warrants, where the facts supporting a search are the result of direct police observation.

I agree that "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause," *Gates, supra* at 239, is insufficient to constitute a basis for issuance of a valid search warrant. The statement at issue in the present case, however, was not an unilluminating assertion that the police officer "has cause to suspect and does believe" that there was evidence of defendant's criminal operation of a motor vehicle to be found in defendant's blood. *Nathanson v United States,* 290 US 41, 44; 54 S Ct 11; 78 L Ed 159 (1933); see also *People v Effelberg,* 220 Mich 528, 530; 190 NW 727 (1922) (probable cause was not shown where an affidavit stated that the affiant "believes and has good cause to believe" that a violation of the prohibition law was taking place in the place to be searched); *People v Rosborough,* 387 Mich 183; 195 NW2d 255 (1972) (the affiant noted seemingly innocent conduct of carrying bags in and out of an establishment, and then concluded that those persons had conspired to violate the state gambling laws). Nor did the officer assert that the basis of the request was "reliable information from a credible person, and . . . believe[d]" that the defendant was criminally responsible for a death and that

evidence of that criminal responsibility could be found in defendant's blood. *Aguilar v Texas,* 378 US 108, 109; 84 S Ct 1509; 12 L Ed 2d 723 (1964). Instead, on the basis of direct observation of investigating officers transmitted to the affiant officer in the present case, the affidavit stated that (1) the defendant had been operating a vehicle in a specified location on or about 11:40 P.M.,[5] (2) that a collision had occurred, (3) that the defendant appeared under the influence of intoxicating liquor, and (4) that the defendant had been involved in an accident involving death.

The majority appears to believe that the affidavit should have provided the underlying details of why the defendant appeared to be intoxicated. Thus, the majority states "[w]ithout such facts, it would be impossible for the magistrate to have independently concluded that there was probable cause to search." *Ante* at 171 (CAVANAGH, J.). This approach misfocuses a very simple question: Could the magistrate believe that the defendant's blood would contain evidence of alcohol? The answer is evident—because a police officer, a presumptively reliable source, trained to make such observations,[6] swore that defendant had been in an automobile accident shortly before the time that the affidavit was sought and appeared to be intoxi-

---

[5] As a result of the dissipation of blood-alcohol content over time, it was important to the magistrate's probable cause determination that the accident in question had only recently occurred. Because the critical inquiry was whether the "place to be searched" would yield sizeable evidence, notation of the time of the accident made it reasonable for the magistrate to conclude that evidence of the defendant's alcohol ingestion would be found in the blood withdrawn. See LaFave, *supra,* § 3.7, pp 74-88.

[6] In fact, this observation is so well within the common understanding that a layperson could attest to it. See, e.g., *Beaubien v Cicotte,* 12 Mich 459, 501-503 (1864); *People v Borgetto,* 99 Mich 336, 340-341; 58 NW 328 (1894) (laypersons are competent to testify regarding a person's insanity, and the observations on which such an opinion is based).

cated. This information did not state a conclusion of criminal activity, i.e., defendant violated the statute. Rather, the affidavit provided the basis for the magistrate to determine that the place to be searched (the defendant) probably contained evidence of a statutory violation because he had very recently been involved in an accident causing a fatality and appeared to be intoxicated.

C

1

When police seek a search warrant on the basis of information provided by either named or unnamed informants, the affiant must provide a basis on which the magistrate can evaluate the reliability of the material supplied. See *Gates, supra.* Unlike informants, however, whose suspected unreliability warrants the need for information validating the information provided, law enforcement officers are presumed to be inherently reliable, and consequently require no special showing of reliability. "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v Ventresca,* 380 US 102, 111; 85 S Ct 741; 13 L Ed 2d 684 (1965). See also *People v Mackey,* 121 Mich App 748; 329 NW2d 476 (1982).[7]

---

[7] The affiant in the present case did not expressly state in his affidavit that he was relying on information received from fellow officers. See *Mackey, supra;* *United States v Kirk,* 781 F2d 1498, 1505 (CA 11, 1986). The requirement that an affiant state in his affidavit that he is relying on information provided by other officers is met, however, "if it is clear from reading the affidavit as a whole, that it is based in part upon information obtained from other law enforcement officers." *Id.* I find it clear from reading the affidavit as a whole, and interpreting it in a common sense, and not a hypertechnical manner, *Ventresca, supra* at 108-109, that the affidavit was based on information received from other law enforcement officers. The affidavit makes

In *People v Dixon,* 392 Mich 691, 696-699; 222 NW2d 749 (1974), we held that a police officer is authorized to make a misdemeanor arrest without a warrant for an offense committed in the officer's presence, where the presence requirement is fulfilled through information obtained from other police officers:

> [A] "police team" qualification of the presence requirement, permitting officers who are working together on a case to combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness all the elements of the offense. [*Id.* at 698.]

The principle presented in *Ventresca* and *Dixon* is applicable to the present case. The affiant police officer presented inherently reliable information to the magistrate, representing the collective direct knowledge and observations of the investigating police team at the accident. This inherent reliability renders the need for further proof supporting the statements of the officer in the present case unnecessary.[8]

no claim that the affiant is relying on information from informants, and it would be known to the magistrate that officers would be investigating the scene of a fatal accident. It would further be clear to the magistrate from the time of the accident noted in the affidavit that it would have been impossible for the affiant to go to the scene of the accident, make a personal investigation, and then travel to the magistrate's home to present the affidavit in support of the search warrant.

[8] The affidavit did not violate the statutory requirements of MCL 780.653; MSA 28.1259(3) by failing to describe those persons from whom the affiant officer had obtained the information contained in the affidavit. *Ante* at 172, n 5 (CAVANAGH, J.). The provisions cited by the majority were added by amendment in 1988 to repudiate this Court's decision in *Sherbine, supra,* and make it clear that the statute required no more to support information provided by an informant than was constitutionally required. See *ante* at 166-168. The language

2

The issue in this case is not whether the information was reliable. It is whether the magistrate had a substantial basis for believing that the place sought to be searched, the defendant's blood, was likely to contain alcohol within hours of a fatal accident. It is well established that in making this determination, weight is to be given to the experience and expertise of the police officers. "This is as it should be, for there 'would be little merit in securing able, trained men to guard the public peace' if their actions were to be 'measured by what might be probable cause to an untrained civilian.'" 1 LaFave, Search & Seizure (2d ed), § 3.2(c), p 571 (citations omitted).

In *State v Babbell,* 770 P2d 987, 989 (Utah, 1989), the Utah Supreme Court rejected a defendant's claim that a warrant issued to search the defendant's truck was not supported by probable cause, where the affidavit merely stated that the truck "matched the description" of the truck used to transport the alleged victim of an aggravated sexual assault given to police by the victim and several witnesses. The affidavit included a detailed description of the truck used to transport the victim to the place where the assault occurred, but in requesting a warrant to search the particular defendant's truck, the affiant police officer stated only that defendant's truck "matched the descrip-

of the amendment is intended only to require further authentication of the information provided by *informants,* as is constitutionally necessary, not evidence by which a magistrate would unnecessarily test the reliability of information communicated by one inherently reliable police officer that represents the collective knowledge of the entire team investigating the accident. If the source of the information is a police officer, the source is presumptively reliable under both the United States Constitution, *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), and Michigan law, *People v Goeckerman,* 126 Mich App 517, 522; 337 NW2d 557 (1983).

tion" of the truck described, based on direct police observation. Despite expressing some disappointment in the quality of drafting of the affidavit, *id.* at 992, n 3,[9] and acknowledging that the question was a close one, the court found it to be sufficient to support a finding of probable cause. Noting that the affiant was a trained officer, the court concluded that "it was within the magistrate's discretion to construe [the affiant's] statement that [the defendant's] truck 'matched the description' to mean that the truck matched with respect to those characteristics expressly described in the affidavit." *Id.* at 992.

In *United States v Fannin,* 817 F2d 1379 (CA 9, 1987), Drug Enforcement Agency and Internal Revenue Service agents had direct knowledge of the defendant's involvement in drug trafficking, as a result of undercover investigations that placed the agents in contact with the defendant at locations away from the defendant's home. Although the federal agents had not been to the defendant's residence, they sought a warrant to authorize a search of the location where the agents believed books and records of illegal transactions could be found. The affidavit supporting the request for a warrant was based on direct observation by the officers of the defendant during the investigation, which was described in an affidavit, as well as the affiant's and other agents' stated experience and expertise in federal narcotics and financial investigations. The *Fannin* court rejected the defendant's contention that the search warrant issued was not supported by probable cause to search his resi-

---

[9] I do not doubt that the affidavit in the present case could have been more artfully drafted. It would clearly have been preferable if more detail had been provided. We are not primarily concerned here, however, with providing instruction to affiants on the preferable content of affidavits, but with the legal sufficiency of the affidavit before us.

dence, noting that "in weighing the evidence supporting a request for a search warrant, a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Id.* at 1382.

In the present case, I find it reasonable to allow the magistrate to construe from the statement in the affidavit that the defendant "appears . . . under the influence of intoxicating liquor" to mean that the defendant exhibited those characteristics typical of an intoxicated person. Police with any significant experience, especially in the area of traffic accident investigation, have significant experience in the observation of persons who are intoxicated and training in blood-alcohol levels and dissipation rates. I am hard-pressed to find that the magistrate's reliance on these experienced observations of police officers to conclude that evidence of intoxication would be found in defendant's blood advances the danger of unwarranted intrusions against which the protections of the Fourth Amendment are meant to stand guard.

D

In the present case, police officers investigating the scene of a fatal automobile accident observed behavior by the defendant that led them to suspect that he had been driving his car while under the influence of alcohol.[10] The officers sought to obtain a sample of the defendant's blood to be tested for blood-alcohol content as quickly as possible,[11] while

[10] The record indicates that officers at the scene of the accident who interacted with the defendant before he was transported to the hospital for treatment believed that the defendant was "f'd up" or, more specifically, "filthy drunk."

[11] While provisions are made in the implied consent statutes of our Motor Vehicle Code for blood tests to be taken upon a police officer's determination that he has "reasonable grounds" to believe that a

still adhering to the preferential procedure of obtaining court authorization for the search.[12] The magistrate found that it was likely that evidence of crime was to be found in the blood of an

---

person has committed certain enumerated crimes, the statute requires the officer to advise the person suspected, at least if the person is competent to grant or refuse consent, of certain statutory rights. MCL 257.625a(6); MSA 9.2325(1)(6). If the person then refuses the officer's request that a blood test be taken, the officer must obtain a court order before proceeding with the test. MCL 257.625d; MSA 9.2325(4). The more efficient route, therefore, may often be direct application for a search warrant. "The warrant procedure exists independently of the testing procedure set forth in the implied consent statute." *Manko v Root,* 190 Mich App 702, 704; 476 NW2d 776 (1991). See, also, e.g., *People v Cords,* 75 Mich App 415, 421; 254 NW2d 911 (1977).

In the alternative, if, after an accident, a sample of the blood of a driver involved in the accident is withdrawn for medical treatment, "the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding" to show the driver's blood-alcohol content. MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e). The exigency presented by the rapid dissipation of a driver's blood-alcohol level over time, however, may counsel against investigating officers waiting for the withdrawal of blood for medical treatment.

Police officers may be further concerned over delays in blood withdrawal as a result of several decisions by lower courts stating that before the results of tests for intoxication can be admitted into evidence, a foundational requirement of proof that the test was performed within a reasonable time after arrest must be met. *People v Schwab,* 173 Mich App 101; 433 NW2d 824 (1988) (affirmed suppression of Breathalyzer tests performed 2¼ hours after the defendant was first stopped by the police), *People v Kozar,* 54 Mich App 503, 509, n 2; 221 NW2d 170 (1974) (holding that there need not be expert testimony interpreting results of chemical tests conducted to detect blood-alcohol level or relating the results back to the time of the alleged offense, but outlining four foundational prerequisites for introduction of the results as evidence, including proof that the tests were performed a reasonable time after arrest). Because a person's blood-alcohol level dissipates over time, the danger to the rights of the defendant that are being protected by such a rule is not readily apparent.

[12] Factual situations similar to those presented in the instant case have been found to justify withdrawal of blood without a warrant to test alcohol content incident to a lawful arrest, even over a defendant's objection, because of the exigency of the dissipation of blood-alcohol levels shortly after alcohol consumption ceases. *Schmerber,* supra. Given that the police had probable cause to place the defendant under arrest before the blood was seized, it is immaterial that the formal arrest came after the seizure. *Rawlings v Kentucky,* 448 US 98, 110-111; 100 S Ct 2556; 65 L Ed 2d 633 (1980).

individual who was involved in an accident shortly before operating a vehicle and who appeared to be intoxicated. Neither constitutional protections against unreasonable searches, nor the statutory provisions that were enacted to implement those constitutional protections require more.

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the [United States Supreme] Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. [*Ventresca, supra* at 108.]

II

Assuming arguendo that the written affidavit in the present case is defective, I disagree with the majority's conclusion that the affidavit cannot be supplemented by sworn, unrecorded, oral statements by the affiant. I further disagree with the decision to utilize the exclusionary rule to suppress highly probative evidence.

A

By holding that all the facts and circumstances supporting a finding of probable cause must be

contained within the four corners of an affidavit presented in support of a request for a search warrant, the majority engrafts a requirement for search warrant applications beyond those that are constitutionally required. Contrary to such a conclusion, I find the Legislature's past disagreement with this Court's attempt to impose requirements for search warrant applications beyond those that are constitutionally required, *ante* at 188, and this Court's explicit holding that no compelling reasons exist in the context of the removal of blood for testing to find that the Michigan Constitition affords greater protections than those provided by the Fourth Amendment, *ante* at 188-189, to provide a clear indication that the Legislature meant the search warrant statutes to implement protections commensurate with, but not more stringent than, the Fourth Amendment.

As acknowledged by the majority, numerous federal courts have held that warrant application procedures that include consideration by a magistrate of sworn, but unrecorded, oral testimony provided at the time of application, satisfy the Fourth Amendment. See, i.e., *United States v Clyburn,* 24 F3d 613 (CA 4, 1994), *United States v Shields,* 978 F2d 943 (CA 6, 1992), and other cases cited by the majority. *Ante* at 181-182 (CAVANAGH, J.). The United States Supreme Court has not ruled on the issue of oral supplementation of deficient affidavits, but has held only that appellate review of a determination of probable cause for issuance of a search warrant must be based solely on the information brought to the attention of the magistrate. *Aguilar v Texas, supra* at 109, n 1. This principle is not offended by supplementation of a deficient affidavit by oral statements to a magistrate. Nor does such supplementation offend the express protection embodied in the Fourth Amendment,

which only requires that a finding of probable cause for issuance of a warrant be "supported by *Oath or affirmation.*" US Const, Am IV (emphasis added). Because sworn oral supplementation of a deficient affidavit does not violate the requirements of the Fourth Amendment, and that is all that is required by our statutes and state constitution, I would allow supplementation in the manner utilized in the present case. See *Clyburn, supra* at 617, *Shields, supra* at 946 and see also *Powell, supra* at 525-526 (CORRIGAN, P.J.).

B

Application of the exclusionary rule to any technical violation of our search warrant statute that may have occurred in the present case is unwarranted. Particularly where the magistrate is a sitting judge, as are virtually all magistrates in this state, I cannot conclude that the risk of relying on after-the-fact allegations are so substantial that we must suppress evidence. The exclusionary rule is intended to serve a deterrent purpose, and loses any useful force and effect when applied to technical errors that do not rise to the level of negligent or wilful conduct, serving then only to deprive the trier of fact of relevant and probative evidence. As explained by the United States Supreme Court in *Michigan v Tucker,* 417 US 433, 446-447; 94 S Ct 2357; 41 L Ed 2d 182 (1974):

Just as the law does not require that a defendant receive a perfect trial, only a fair one, it cannot realistically require that policemen investigating serious crimes make no errors whatsoever. The pressures of law enforcement and the vagaries of human nature would make such an expectation unrealistic. Before we penalize police error, therefore, we must consider whether the sanction serves a valid and useful purpose.

* * *

The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

In the present case, police officers pursued the constitutionally preferable course of seeking a search warrant from a neutral and detached magistrate by way of presentation of a handwritten affidavit rushed to the home of a magistrate and presented to him in the early morning hours. Working against the time constraint presented by the dissipation of the alcohol level in defendant's blood over time, I cannot find in any failure of draftsmanship an "error" justifying correction through the unwarranted remedy visited by the majority.

The deterrence rationale has no force whatsoever in this setting. The investigator did not engage in misconduct worth deterring in a rational society. The "error" attributable to the police procedure was technical. I am unwilling to equate the slight human imperfection in draftsmanship depicted here in the "midst and haste of a criminal investigation" with misbehavior warranting the drastic remedy of suppression. Far from advancing the deterrent purposes of the exclusionary rule, exclusion of this evidence promotes public disrespect for the legal process. [*Powell, supra* at 529 (CORRIGAN, P.J.).]

In *United States v Hill*, 500 F2d 315, 322 (CA 5,

1974), the United States Court of Appeals for the Fifth Circuit expressed similar disdain over the possibility of exclusion of relevant evidence seized through a search warrant obtained by presentation of a deficient affidavit supplemented by oral statements regarding certain informers' reliability:

> [T]his situation furnishes no occasion to apply the exclusionary rule to bar evidence of Hill's criminality that was obtained in executing the warrant. Phillips acted properly in going to the magistrate and seeking a warrant. Magistrate Sear acted properly in calling for additional information to demonstrate credibility. Thus, the only error attributable to the procedure they followed is a technical one that would in no way serve the deterrent purposes of the rule.

The facts of the present case present an even more compelling argument against utilization of the exclusionary rule to bar objective evidence of defendant's blood-alcohol content. Unlike the affiant in *Hill,* who relied on information provided by inherently unreliable informants, the affiant in the present case relied on inherently reliable information provided by police officers who obtained their information by direct observation. The only "error," if at all, was in not including in the affidavit needless supporting details explaining the trained observation that the defendant appeared to be intoxicated. Where the exclusionary rule is used in such a situation to bar relevant and probative evidence, the rule does violence to the truth-seeking function that the Fourth Amendment does not require and that should not be countenanced.

The majority's assertion of legislative acquiescence in the decision in *Sherbine, supra,* to use of

the exclusionary rule to suppress evidence obtained in alleged violation of the statute before us is wholly mistaken. In *Sherbine,* this Court's majority interpreted the former version of the statute as if it imposed a more restrictive standard than the Fourth Amendment and suppressed evidence on the basis of that consideration. The swift reaction of the Legislature was to amend MCL 780.653; MSA 28.1259(3), to make it clear that the Court was incorrect in concluding that what had occurred was a statutory violation. The Legislature had no need to say what should not be excluded; it relied on the Court's word that were it clear that the Legislature had authorized the warrant, suppression would not be ordered.

Acting on our representation, the amended legislation tracked the Fourth Amendment. Because "our holding that evidence obtained in violation of the statute must be excluded," *ante* at 183 (CAVANAGH, J.), was wholly derived from our narrow reading of MCL 780.653; MSA 28.1259(3), the legislative amendment of the statute is not an acquiescence in, but rather a repudiation of, the view in *Sherbine* that the evidence should be excluded.

III

For the reasons stated above, I dissent from the majority's decision in the present case. I would reverse the decision of the Court of Appeals and reinstate the trial court's decision to deny the defendant's motion to suppress the results of tests conducted to detect the defendant's blood-alcohol content.

RILEY and WEAVER, JJ., concurred with BOYLE, J.