RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

                                                        No. 11-4313

        *v.*

KENNETH ROSE,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:09-cr-47-1—Michael R. Barrett, District Judge.

Argued: November 29, 2012

Decided and Filed:  April 18, 2013

Before:  MARTIN, SILER, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant.  Benjamin C. Glassman, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.  **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant.  Christy L. Muncy, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge.  Kenneth Rose pleaded guilty to three counts of production of child pornography in violation of 18 U.S.C. § 2251.  Rose appeals the district court's denial of three motions: (1) a motion to suppress evidence; (2) a motion for a *Franks* hearing; and (3) a motion to dismiss the superseding indictment.  For the reasons below, we AFFIRM the judgment of the district court.

1

I.

In November 2008, the Personal Crimes Unit of the Cincinnati Police Department began investigating allegations that Kenneth Rose sexually abused three minors. When the police interviewed the minors, they said that Rose had sexually molested and/or raped them and that he had shown them pornographic images on a computer in his bedroom. As a result of the interviews, the police sought to obtain a search warrant for 709 Elberon Ave., Cincinnati, OH. The application for the search warrant asked for permission to search for computers and computer-related materials in support of an investigation under Ohio's rape statute, Ohio Rev. Code § 2907.02.

The front page of the search warrant identified "Kenneth Rose" as the subject of the search, and immediately below Rose's name, it identified the location to be searched as "709 Elberon Av. [sic], Cincinnati, Hamilton County, Ohio 45205." The warrant described the physical attributes of the address, including that the name "Rose" appeared over the doorbell of apartment number one. Attached to the warrant was a photograph of the property taken from the Hamilton County Auditor's website. The supporting affidavit summarized the testimony of the three victims, including testimony that Rose had shown two of the victims pornographic images on a computer "located in his room" or "located in his bedroom." The third victim testified that he engaged in nonconsensual sexual activity with Rose beginning in July 2008. The affidavit explained that the police sought to obtain computers and related documentation.

Nowhere in the affidavit did the affiant, Police Officer Chris Schroder, provide Rose's address. Nevertheless, the magistrate judge granted Officer Schroder's request for the search warrant.

Police executed the warrant on November 12, 2008 and seized, among other items, a laptop computer. Forensic analysis of the computer revealed numerous images of child pornography, several of which included Rose engaged in sexual conduct with several male minors under the age of sixteen.

On April 15, 2009, the grand jury for the Southern District of Ohio indicted Rose on one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a), and five counts of production of child pornography, in violation of 18 U.S.C. § 2251. A superseding indictment filed on November 3, 2010 charged Rose with seventeen additional counts of production of child pornography. Rose moved the district court to suppress the evidence discovered as a result of the search, which the district court denied following a hearing on the motion. Rose moved to dismiss the superseding indictment, which the district court also denied. Finally, Rose filed an omnibus motion requesting, among other things, reconsideration of his motion to suppress and a *Franks* hearing. Following a hearing, the district court denied the omnibus motion.

Rose entered into a conditional plea agreement, pleading guilty to three counts of production of child pornography in exchange for preservation of his right to appeal the district court's decisions on his motion to suppress and his motion to dismiss. On November 15, 2011, Rose was sentenced to fifty-one years in prison to be followed by a lifetime of supervised release.

## II.

Rose argues that the district court erred in denying his motion to suppress because the affidavit did not establish probable cause. Specifically, Rose argues that the affidavit failed to establish the required nexus between the place to be searched and the evidence sought.

When reviewing a district court's denial of a motion to suppress, this Court reviews the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Beauchamp*, 659 F.3d 560, 565 (6th Cir. 2011) (citing *U.S. v. Henry*, 429 F.3d 603, 607 (6th Cir. 2005)). In doing so, we consider the evidence in the light most favorable to the government. *Id.* at 565–66 (citing *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003)).

The Fourth Amendment requires probable cause for searches and seizures. U.S. CONST. amend. IV. To find probable cause, a judge issuing a search warrant must have

a substantial basis for thinking that there is a fair probability that evidence of a crime would be found at the premises. *United States v. Williams*, 544 F.3d 683, 685–86 (6th Cir. 2008). This requires a nexus between the place to be searched and the evidence sought. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). In order to establish a sufficient nexus, there must be reasonable cause to believe that the items sought are located on the property to which the affiant seeks entry. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). When making a probable cause determination, a court is limited to the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). This Court should give great deference to a magistrate judge's determination of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

This Court has noted that, in order to establish probable cause, the affidavit must "describe the relationship of the [defendant] to the premises." *United States v. Savoca*, 761 F.2d 292, 297 n. 8 (6th Cir. 1985). In *United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir. 1998), this Court suggested that probable cause did not exist because the affidavit in question "completely neglect[ed] to indicate *why* the affiant believed that Shutters himself had any connection with the [residence searched]." *Van Shutters*, 163 F.3d at 336.

Here, although the search warrant provided a description of the property that tenuously linked the property to Rose by explaining that the name "Rose" appeared over the doorbell of apartment number one, the affidavit did not provide a link between the property and Rose. The affidavit merely explained that the victims testified that criminal activity took place in Rose's bedroom and nothing more. There is no way to read the affidavit and to conclude that the magistrate judge had a substantial basis for thinking that there was a fair probability that evidence of the crimes described in the affidavit would be found at 709 Elberon Ave. As a result, the affidavit did not provide probable cause to believe that the items sought in the warrant were located at 709 Elberon Ave.

Giving the magistrate judge's probable cause determination the deference that it is due, we still find that probable cause does not exist in the present case. The affidavit

undoubtedly links Rose, and Rose's bedroom, to evidence of criminal activity, but because it fails to link Rose to 709 Elberon Ave., it does nothing to establish the required nexus between the place to be searched and the evidence sought.  If, for example, the affidavit stated that the victims alleged that the sexual misconduct took place at 709 Elberon Ave., or that an investigation revealed that Rose lived at 709 Elberon Ave., there would be probable cause to believe that evidence of the crimes described in the affidavit would be found at 709 Elberon Ave.  There was no probable cause to search 709 Elberon Ave. because the affidavit failed to establish the nexus between 709 Elberon Ave. and the evidence sought in the investigation of Rose.

Rose also argues that if this Court finds that the affidavit does not establish probable cause, the good-faith exception does not apply because the affidavit lacks the requisite indicia of probable cause.

If an affidavit lacks probable cause, "[t]he Supreme Court has recognized an exception to the exclusionary rule where 'the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate . . . .'"  *United States v. Watson*, 498 F.3d 429, 431 (6th Cir. 2007) (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 987–88 (1984)).  This is known as the good-faith exception.  *Id.*  In determining whether an officer had good faith, this Court looks to whether the officer would have known that the search was illegal, despite the magistrate's authorization.  *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (quoting *U.S. v. Leon*, 468 U.S. 897, 922–23 (1984)).  However, the good-faith exception does not apply to affidavits so lacking indicia of probable cause that a belief in the existence of probable cause would be objectively unreasonable.  *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23).

An affidavit lacks the requisite indicia of probable cause if it is a "bare-bones" affidavit.  *See Laughton*, 409 F.3d at 748.  The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause.  *Id.* at 748–49.  The bare-bones

inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and that go beyond bare conclusions and suppositions. *Id*. at 748. We are bound by the four corners of the affidavit, and we may not consider what the officer executing the warrant knew or believed. *Id*. at 750–52.

As an initial matter, the affidavit's failure to provide an address is akin to a clerical error. This Court has applied the good-faith exception in a case where neither the warrant nor the affidavit provided an address. *See Watson*, 498 F.3d at 432–34. Finding that the good-faith exception does not apply in this case because the affidavit failed to provide the address listed on the warrant would be a hyper-technical reading of the requirements of the Fourth Amendment.

Rather, the question is whether the affidavit's failure to provide a connection between the evidence sought and 709 Elberon Ave.— by way of its failure to link Rose to 709 Elberon Ave.—makes the affidavit so bare bones that the officer conducting the search could not have relied on its legality in good faith, thus precluding application of the good-faith exception.

Rose relies on *United States v. McPhearson* and *United States v. Laughton* in support of his argument that the good-faith exception does not apply in this case. In *McPhearson*, the defendant sought to suppress evidence seized from his residence. *McPhearson*, 469 F.3d at 520. After arresting the defendant on the front porch of his home for simple assault and finding crack cocaine in one of his pockets, the police obtained a search warrant to search the defendant's home for evidence of drug trafficking. *Id*. at 520–21. After affirming the district court's finding that probable cause did not exist, this Court went on to affirm the district court's determination that the good-faith exception did not apply because of the bare-bones nature of the affidavit. In particular, we held that the affidavit's mention of the defendant's arrest in front of his home, and the subsequent discovery of crack cocaine in his pocket, did not establish the minimal nexus between the drug-trafficking evidence sought and the defendant's home that was necessary to justify the application of the good-faith exception. *Id*. at 524–27.

*McPhearson* is not instructive in this case.  Unlike the affidavit in *McPhearson*, the affidavit in the present case firmly establishes a nexus between the evidence sought and the defendant's residence.  The affidavit's deficiency is in its failure to link the defendant's residence to the place to be searched, 709 Elberon Ave.

In *Laughton*, the police sought and obtained a search warrant authorizing the search of the defendant's home after a confidential informant provided testimony that he bought methamphetamine from the defendant multiple times while in the defendant's home.  *Laughton*, 409 F.3d at 746–47.  The affidavit was flawed, however, because it did not state that the informant purchased the methamphetamine from the defendant nor did it state that he purchased methamphetamine while in the defendant's home.  *Id.* at 747–48.  The affidavit simply stated that the informant purchased methamphetamine multiple times and that the informant observed controlled substances at or in the defendant's residence.  *Id.* at 746–47.  Further, the affidavit did not provide dates or times when the informant made the observations, raising the possibility that the information was stale, nor did the affidavit connect the defendant to the address provided.  *Id.* at 747.  This Court affirmed the district court's finding that probable cause did not exist, but it reversed the district court's finding that the good-faith exception applied.  *Id.* at 747–52.  We noted that, while there have been several cases in this Circuit in which we have applied the good-faith exception despite questions about the nexus between criminal activity and the place the officers desire to search, we could not apply the exception in Laughton's case because, unlike in those cases, there was no "modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched."  *Id.* at 749.

*Laughton* is distinguishable from the case at hand because there were several problems with the *Laughton* affidavit, the least of which was the failure to connect the defendant to the address provided.  In *Laughton*, the primary problem with the affidavit was its failure to connect criminal activity to the defendant's residence.  In the present case, the only problem with the affidavit is that it fails to connect Rose with 709 Elberon Ave.  The present affidavit does, however, establish a link between criminal activity and

Rose as well as between criminal activity and Rose's residence. In addition, the affidavit provides dates for the alleged criminal activity, which does away with the staleness problem raised in *Laughton*.

This case is more analogous to *Van Shutters*, where the failure to link evidence of criminal activity to the address searched was really a by-product of the fact that the affidavit "completely neglect[ed] to indicate *why* the affiant believed that [the defendant] himself had any connection with the [address]." *Van Shutters*, 163 F.3d at 336. In *Van Shutters*, the defendant challenged his convictions on the grounds that the police conducted an unconstitutional search of his Tennessee residence. *Id.* at 333. The defendant purchased several vehicles using fraudulent cashier's checks that he manufactured, and then took the vehicles across state lines and sold them. *Id.* The Tennessee Highway Patrol began an investigation, and after the defendant was arrested in Georgia, the Highway Patrol sought and obtained a warrant to search a Tennessee residence it believed to be occupied by the defendant. *Id.* at 334. In applying the good-faith exception, we noted that, despite the affidavit's failure to connect the defendant to the Tennessee residence, the affidavit: (1) connected the defendant to criminal activity by way of an investigation and victims' testimony; (2) stated that the affiant was an experienced law enforcement officer and provided the corresponding credentials; and (3) described with particularity the location of the residence. *Id.* at 337–38.

Once again, the question before us when determining whether the good-faith exception applies is whether the officer conducting the search exercised objective and reasonable reliance on the legality of the warrant. Taking into consideration everything within the four corners of the affidavit, the officer conducting the search of Rose's home exercised good faith and acted in objectively reasonable reliance on the warrant's legality. First, the affidavit showed that the case involved three victims who had spent time at Rose's home and provided detailed testimony about the activities that took place therein. Second, the affidavit related that the affiant was a detective in the Personal Crimes Unit and that he had been conducting an investigation into the victims' allegations. Viewing the evidence in the light most favorable to the government, it

would be entirely reasonable to conclude that either the testimony of the three victims or the independent investigation by the detective, or both, revealed that Rose lived at 709 Elberon Ave.

Finally, the good-faith exception is premised on the idea that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon*, 468 U.S. 897, 916 (1984). The facts of this case do not raise fears of police misconduct. Officer Schroder conducted an investigation into allegations by several victims that Rose sexually abused them and showed them pornographic images on his computer in his bedroom. It is fair to presume that, given his investigation and the number of witnesses, Officer Schroder secured Rose's address with relative ease. The affidavit provided overwhelming evidence linking Rose and his residence to a crime and to the evidence sought in the search warrant. The affidavit simply failed to provide the link between Rose and 709 Elberon Ave. Although such an oversight should not be taken lightly, the facts of this case support the application of the good-faith exception. Rather than fears of police misconduct, this case merely raises concerns about sloppiness in drafting affidavits within the Cincinnati Police Department.

III.

Rose argues that the district court erred in denying his motion for a suppression hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because, after the district court denied his motion to suppress, he obtained evidence that revealed inconsistencies in the victims' testimony.

This Court reviews the district court's denial of a *Franks* hearing under the same standard used to review the district court's denial of a motion to suppress: factual findings are reviewed for clear error and conclusions of law are reviewed de novo. *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001) (citing *United States v. Hill*, 142 F.3d 305, 310 (6th Cir. 1998)).

A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless

disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit. *Franks*, 438 U.S. at 171–72.

In support of his argument that he is entitled to a *Franks* hearing, Rose relies on videotaped interviews of the victims and Officer Schroder's unredacted notes, both of which Rose obtained after the district court ruled on his Motion to Suppress. Rose argues that the videotaped interviews and the notes reveal that the victims contradicted themselves over the course of several interviews and that there were inconsistencies among the victims' versions of the events that took place at Rose's residence. Nonetheless, Rose has not established that the statements in the affidavit are in fact false. The evidence seized from Rose's computer establishes that the substance of the allegations were true. Without a showing of falsity concerning the statements in the affidavit, Rose cannot make a substantial showing that the affiant provided statements in the affidavit that he knew to be false. Thus, the district court did not err in denying Rose's motion for a *Franks* hearing.

## IV.

Rose argues that the district court erred in denying his motion to dismiss the superseding indictment, which charged Rose with production of child pornography in violation of 18 U.S.C. § 2251, because his activities related to all counts were wholly intrastate.

In reviewing a district court's ruling on a motion to dismiss an indictment, this Court reviews the district court's legal conclusions de novo and its finding of fact for clear error or abuse of discretion. *United States v. Trent*, 654 F.3d 574, 578 (6th Cir. 2011) (citing *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010)). Because there are no facts in dispute, our review is entirely de novo.

Congress has the power to regulate interstate commerce under the Commerce Clause. U.S. CONST. art. 1, § 8, cl. 3. In *United States v. Bowers*, 594 F.3d 522, 529 (6th Cir. 2010), this Court, relying on the Supreme Court's decision in *Gonzales v.*

*Raich*, 545 U.S. 1 (2005), held that "Congress has the ability to regulate wholly intrastate manufacture and possession of child pornography, regardless of whether it was made or possessed for commercial purposes, that it rationally believes, if left unregulated in the aggregate, could work to undermine Congress's ability to regulate the larger interstate commercial activity."

Rose claims that the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566 (2012), calls into question whether *Bowers* still controls the issue of the intrastate manufacture and possession of child pornography. The district court did not address this question because the Supreme Court had not yet decided the case. The relevant issue in *Sebelius* was whether the Affordable Care Act's requirement that virtually all Americans obtain health insurance or pay a penalty was an unconstitutional exercise of Congress's power under the Commerce Clause. *Sebelius*, 132 S.Ct. at 2585–2591. The Court determined that the mandate "cannot be sustained" under Congress's Commerce Clause power because it forces into commerce individuals who have elected to refrain from such commercial activity, which goes beyond Congress's Commerce Clause powers. *Id.* at 2591.

The Supreme Court's decision in *Sebelius* did nothing to abrogate its holding in *Raich* that Congress has the power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce; therefore, this Court's decision in *Bowers* still controls the issue of the intrastate manufacture and possession of child pornography. The statute at issue in this case, 18 U.S.C. § 2251, does not force into commerce individuals who have refrained from commercial activity. Rose is not a passive bystander being forced into commerce, but he is actively engaged in an economic class of activities that has traditionally been regulated by Congress pursuant to its powers under the Commerce Clause. Rose's expansive reading of *Sebelius* to include stripping Congress of its authority to regulate the intrastate manufacture and possession of child pornography is inaccurate.

For the above reasons, we AFFIRM the judgment.