# Order

Michigan Supreme Court
Lansing, Michigan

January 17, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

160148

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

                              SC:  160148
                              COA:  346534
DAIL GLENN DEBRUYNE,              Jackson CC:  18-004322-FH
      Defendant-Appellee.

_____/

On order of the Court, the application for leave to appeal the July 11, 2019 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

ZAHRA, J. (*dissenting*).

I disagree with this Court's decision to deny the prosecution's application. On January 26, 2018, defendant was driving his motorcycle in Napoleon Township. His ex-wife, Ann Sahadi, was riding on the back and neither was wearing a helmet. It was an unseasonably warm day and the road was dry. Defendant was traveling 70 to 80 miles per hour on Austin Road, which is a two-lane road with a speed limit of 55 miles per hour in a remote farm area. He weaved across his lane, tailgated a car in front of him, tried to pass a car in front of him on the gravel shoulder, and ultimately passed that car by crossing the double yellow center line. At approximately 5:30 p.m., he failed to negotiate a curve in the road and the motorcycle crashed. Ms. Sahadi suffered a skull fracture and broken neck and died at the scene. Defendant was rushed by ambulance to Henry Ford Allegiance Hospital (HFA) in Jackson. Shortly after the accident, a man who lived at a nearby home who had watched defendant speed by found a whiskey bottle on his property in a roadside ditch. The bottle had not been there previously, and he brought the bottle to the accident scene.

Officer Justin Boatman of the Napoleon Township Police Department interviewed the first responders to the scene, including the firefighters and paramedics, and asked whether they smelled any intoxicants at the scene. They responded that both the driver and passenger of the motorcycle smelled of intoxicants. Boatman also smelled alcohol on the female victim when he examined her.

Boatman drafted an affidavit for a search warrant authorizing a blood draw. The affidavit states in pertinent part:

2. That the affiant has determined through personal contact with witnesses and/or personal observations at the scene, that Dail Glenn Debruyne was the operator of a motor vehicle upon a public highway, or other place open to the general public within the state.

3. That the affiant has personally observed the above named operator and/or believes said person to be under the influence of alcohol, or a controlled substance, or both, or has an unlawful blood alcohol level, based upon the following observation: Debruyne was the driver of a motorcycle involved in fatal accident in which his female passenger was killed (Ann Marie Sahadi). Witness observed Debruyne driving motorcycle [in a] reckless manner, speeding E/B Austin Rd. Debruyne is at HFA being treated for severe injury[.]

A magistrate signed the order at 8:00 p.m. A blood sample was taken and a subsequent test of that sample showed a blood alcohol content (BAC) of 0.136. Defendant had two prior drunk-driving convictions.

Defendant filed a motion to suppress evidence of the blood test results. In an order dated October 15, 2018, the circuit court denied the motion. Defendant filed a motion for reconsideration, which was denied on November 14, 2018. Defendant sought leave to file an interlocutory appeal in the Court of Appeals and sought immediate consideration. On January 10, 2019, that court granted defendant's motion for immediate consideration, but denied leave to appeal "for failure to persuade the Court of the need for immediate appellate review."[1] Defendant appealed in this Court, and we remanded to the Court of Appeals as on leave granted.[2] A panel of the Court of Appeals reversed the circuit court's decision, concluding that "[t]he issuing judge could not reach an independent finding that probable cause existed based on the information provided and the resultant warrant was invalid."[3] The panel also concluded that the defendant's BAC results must be excluded from trial because Officer Boatman's reliance on the warrant was not in good faith. Specifically, the panel concluded that "[t]he affidavit in this case

---

[1] *People v Debruyne*, unpublished order of the Court of Appeals, entered January 10, 2019 (Docket No. 346534).

[2] *People v DeBruyne*, 503 Mich 982 (2019). The discrepancies in the capitalization within defendant's last name reflect the way his name was spelled in the opinions and orders at issue.

[3] *People v DeBruyne*, unpublished per curiam opinion of the Court of Appeals, issued July 11, 2019 (Docket No. 346534), p 4.

was so 'bare bones' and 'lacking in indicia of probable cause' that no 'reasonably well trained officer' could have been believed [sic] the warrant was valid."[4]

The prosecution now appeals in this Court. When a warrant request is based solely on an affidavit, that affidavit must establish probable cause on its face.[5] Conclusory statements by the officer will not suffice.[6] The affidavit must state the facts that justify drawing the asserted conclusions.[7]

But this Court reviews a magistrate's decision to issue a warrant to determine whether a reasonably cautious person could have believed that there was a substantial basis for finding probable cause.[8] The Court must look at the specific facts underlying the probable cause determination and "must ensure that the magistrate's decision is based on actual facts—not merely the conclusions of the affiant."[9]

I disagree with the panel's conclusion that "[t]he warrant affidavit in this case was woefully deficient."[10] The panel explained that "[a] person who is in an accident after driving in a reckless manner and speeding may be intoxicated. However, there are endless other explanations for such behavior, including road rage, showing off, tardiness, or an emergency."[11] I admit these examples may also explain such behavior, but I believe that Officer Boatman's explanation is the most likely explanation of the behavior. Officer Boatman arrived at the scene to find a crashed motorcycle, a deceased passenger reeking of alcohol, and reports from witnesses that leading up to the accident defendant was operating the motorcycle in a reckless manner and speeding. Officer Boatman testified that defendant was not in a position to consent to a blood draw. All of this information in some manner was stated in a sworn affidavit that was provided to a neutral magistrate who signed the warrant. Contrary to the panel's suggestion, the affidavit did not provide " '[u]nconfirmed reports of driving without a seatbelt or slightly over the speed limit, for example, [that] are so tenuously connected to drunk driving that a stop on those grounds would be constitutionally suspect.' "[12] The affidavit provides a more

---

[4] *Id.* at 5.

[5] *Whitley v Warden, Wyoming State Penitentiary*, 401 US 560, 564-566 (1971).

[6] *Illinois v Gates*, 462 US 213, 239 (1983).

[7] *People v Rosborough*, 387 Mich 183, 199 (1972).

[8] *People v Sloan*, 450 Mich 160, 168 (1995), overruled in part on other grounds by *People v Hawkins*, 468 Mich 488 (2003).

[9] *Id.* at 168-169.

[10] *DeBruyne*, unpub op at 4.

[11] *Id.*

[12] *Id.*, quoting *Navarette v California*, 572 US 393, 402 (2014).

descriptive narrative that most people, let alone a reasonably trained police officer, would accept as a substantial basis to believe that defendant was intoxicated.[13]

Further, even if the affidavit was not sufficient to establish probable cause, the officer relied in good faith on the magistrate signing it.[14] "Good faith" is less demanding than probable cause.[15] In this case, the panel held in regard to good faith as follows: "Finding indicia of probable cause in the current affidavit would permit the good-faith exception to swallow the exclusionary rule whole; every single motor vehicle accident, no matter the circumstances, would conceivably result in the issuance of a warrant to draw blood to test for intoxication."[16] This is not analysis; it's hyperbole. Here, at the least, the affidavit indicates that defendant was driving recklessly, and reckless driving often results from impairment of the operator's abilities due to intoxicants. Officer Boatman obviously could have included several facts to bolster the probable cause stated in the affidavit. He could have mentioned that first responders informed him that defendant smelled of alcohol. He also could have mentioned that the victim smelled of

---

[13] Defendant relies heavily on *Sloan*, 450 Mich 160, overruled on other grounds by *Hawkins*, 468 Mich 488. There, the defendant was involved in a fatal car accident and taken to a hospital. *Sloan*, 450 Mich at 163-164. The police obtained a search warrant for a sample of the defendant's blood. *Id*. at 164. The affidavit stated only that the defendant appeared intoxicated. The Court in that case held that the affidavit "plainly failed to provide any basis to sustain a conclusion that probable cause existed." *Id*. at 171. The claim that it "appeared" to the officer that the defendant was "under the influence of intoxicating liquor" was "a mere conclusion or opinion of the affiant," devoid of any articulable facts to support it. *Id*. The Court found that under the circumstances, "it would be impossible for the magistrate to have independently concluded that there was probable cause to search." *Id*. In my view, *Sloan* is distinguishable because in this case there are additional facts stated in the affidavit apart from the conclusion that defendant appeared intoxicated.

[14] *People v Goldston*, 470 Mich 523, 526 (2004); *United States v Abboud*, 438 F3d 554, 578 (CA 6, 2006), cert den 549 US 976 (2006).

[15] *United States v Rose*, 714 F3d 362, 367 (CA 6, 2013), cert den 571 US 910 (2013).

[16] *DeBruyne*, unpub op at 5.

alcohol and that it was likely that defendant had drunk from the bottle of whiskey the neighbor found on his lawn. Perhaps he could have elaborated on the reckless conduct described to him, for instance, that defendant was tailgating other cars and attempting to pass vehicles on the gravel shoulder of the road. But his failure to elaborate in his affidavit does not evince bad faith. Indeed, it is commonly said that one should never attribute to malice that which can be adequately explained by incompetence. After reviewing Boatman's preliminary examination testimony, I agree with the circuit court that there is no question that Boatman relied on the warrant in good faith. Accordingly, I would reverse the Court of Appeals' judgment and reinstate the circuit court's order denying defendant's motion to suppress.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 17, 2020



Clerk

s0114