NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0336n.06

Case No. 20-3492

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 14, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ELDON G. DRAPER, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

BEFORE: SUTTON, Chief Judge; COLE and READLER, Circuit Judges.

SUTTON, Chief Judge. This case arises from competing accounts of a breakup. Eldon Draper reported to the police that his girlfriend stole his truck, torched it, and shot up the back of his house—supposedly to get back at him for leaving her. After conducting a three-day investigation, a detective concluded that Draper had set fire to his own truck, fired three bullets into his own home, then tried to frame his former girlfriend. An indictment of Draper followed. A jury convicted Draper for possessing a firearm after being convicted of a misdemeanor offense of domestic violence. We affirm.

I.

In April 2019, Columbus police investigated a report from Eldon Draper that his girlfriend, Whitney Cousins, had stolen his truck, taking his only set of keys. Officers learned that the fire

department discovered the truck earlier that morning. Someone had lit the 2008 Chevy Avalanche on fire.

Five days later, officers heard from Draper again. He called 911 just after midnight, claiming that Cousins was shooting into his house from his backyard. Police arrived and recovered three spent .38 caliber rounds that passed through Draper's back door.

As officers gathered more evidence, cracks in Draper's story emerged. Security footage from the night of the alleged theft showed a person too large to be Cousins leaving the house and getting into the truck. The officers observed that Draper's backyard lacked lighting, casting a shadow on his claim that he saw Cousins shooting at him. Cousins told a detective that she fled Draper's house the day before his truck burned, that she heard from her landlord that neighbors had complained about Draper shooting his gun outside, and that Draper kept a .38 caliber revolver in his nightstand. She also claimed that several weeks earlier Draper had asked her to type a letter fraudulently claiming that his house had burned down.

All of this prompted the police to turn their attention to a new suspect: Draper. A Franklin County judge approved a search warrant for Draper's home. The search turned up a .38 caliber revolver, ammunition, and keys to Draper's truck. A federal grand jury indicted Draper for possession of a firearm by a person convicted of a misdemeanor crime of domestic violence.

Before trial, Draper moved to suppress the evidence discovered in his home on the theory that the police lacked probable cause to conduct a search. He also moved for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the warrant included false information. The district court denied both motions.

The jury found Draper guilty, and the district court sentenced him to 27 months. Draper appeals, challenging the court's pretrial rulings, the admission of a video, and the absence of a special verdict form.

II.

*Probable Cause*. The Fourth Amendment says that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In evaluating a request for a search warrant, a court asks whether "there is a fair probability" that "evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The salient question is whether the police can show a nexus between the site and the evidence." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018) (quotation omitted). Statements from named sources often support probable cause without further corroboration. *United States v. Hodge*, 714 F.3d 380, 384–85 (6th Cir. 2013).

The warrant application and accompanying affidavit offered ample information that Draper's house held evidence of a crime. The affidavit stated that (1) Draper told an arson investigator that Cousins stole and torched his truck, (2) security footage pointed to a different culprit, and (3) Cousins told police that Draper had asked her to draft a fraudulent letter. It also stated that (4) Draper told police that Cousins had shot into his house, (5) the officers' observations at the scene suggested that Draper's account was false, and (6) Cousins told police that Draper kept in his nightstand a gun matching the bullets recovered at the scene. All told, this evidence created a "fair probability" that Draper had torched his own truck, shot into his own house, and made false reports to the police. It also established a fair probability that evidence of these crimes—his keys and the gun—would be in Draper's house.

Precedent backs up this conclusion. *Peffer v. Stephens* reasoned that "a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence." 880 F.3d 256, 271 (6th Cir. 2018). Just so here. Ample evidence supported the idea that keys and a gun would be at Draper's house.

Draper responds that the warrant application mislabeled his offense as felonious assault, the elements of which could not be satisfied by firing into an empty house. *See State v. Gray*, No. 04AP-938, 2005 WL 2100595, at \*2–3 (Ohio Ct. App. Sept. 1, 2005). But an "affidavit sufficiently supports a warrant so long as it provides probable cause to believe evidence of any crime will be found in the location to be searched, even if it does not provide probable cause to believe that evidence of the particular crimes listed in the affidavit" will be found there. *Peffer*, 880 F.3d at 264 n.3. Draper does not dispute that firing into his house and filing a false police report amounts to a crime. *See* Ohio Rev. Code § 2923.161(A)(1) (making it a felony to "[d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual"); *State v. Ropp*, No. 2018-CA-44, 2020 WL 1082433 (Ohio Ct. App. Mar. 6, 2020) (noting that for a § 2923.161 violation, "occupied structure" means any house that is "maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied").

The warrant also sought evidence that Draper committed arson. The detective wanted to recover the vehicle keys that Draper had told her were the only keys to the truck. This fact provided a nexus to the arson, especially given that "[a] judicial officer may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found . . . and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) (quotation omitted).

Nor was the warrant too conclusory. The U.S. Supreme Court has reserved that designation for affidavits "stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based." *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965) (quotation omitted). Where an affidavit contains specific factual allegations and the magistrate has found probable cause, "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* at 109. The district court found a number of factual allegations in the warrant, including the security footage of a large person entering the truck, the inconsistencies between Draper's statements to police and the physical conditions at his home, and Cousins's reports of Draper's ownership of a handgun and his requests that she draft a fraudulent letter. All features considered, these facts of the warrant application "set[] out the reasons for a belief, as opposed to merely stating a belief." *United States v. Allen*, 211 F.3d 970, 973–74 (6th Cir. 2000).

Draper separately argues that the warrant application relied too heavily on Cousins's account, citing several cases in which we have held that a confidential informant's reports should be corroborated by a police investigation. But the affidavit did name Cousins, alleviating the need for further corroboration. *Hodge*, 714 F.3d at 384–85. Independent evidence in any event corroborated Cousins's account, including the video footage and the spent rounds.

*Franks Hearing*. Draper next argues that the district court erred in denying him a *Franks* hearing. A defendant may obtain a hearing to challenge the propriety of a warrant if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit." *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quotation omitted). But the defendant must allege "deliberate falsity or

5

reckless disregard [on the part] of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171.

Draper's request for a *Franks* hearing fails at the first turn. He identifies one allegedly false statement in the affidavit: the assertion that "[Cousins] contacted her land lord and he told her the neighbors were complaining because Mr. Draper was outside shooting off a gun on Wednesday night." R.31-2 at 5. But he does not explain why this statement is false, leaving empty-handed any effort to establish a "substantial preliminary showing" of a false statement. *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013).

*Admission of Taped Interview*. The court permitted the government to introduce a video at trial, in which the detective asked Draper: "You are not allowed to possess a gun, first of all. You can't have one in your house. You can't have one in your hand, right, first of all?" R.116 at 70. Draper responded "Right," and the detective continued, "All right. So you know this, that you can't have a firearm, right?" *Id.*

At issue is whether this assertion amounted to a legal conclusion and, if so, whether the district court erred in admitting it. While the Federal Rules of Evidence permit the admission of opinions that embrace an ultimate issue, *see* Fed. R. Evid. 704(a), a district court may exclude improper legal conclusions, *Stoler v. Penn Cent. Transp. Co.*, 583 F.2d 896, 899 (6th Cir. 1978). In practice, "we have generally excluded expert testimony for stating a 'legal conclusion' *only* when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019). We review such claims for abuse of discretion, "because it is often difficult to determine whether a legal conclusion is implicated in the testimony." *United States v. Ahmed*,

472 F.3d 427, 434 (6th Cir. 2006) (quotation omitted); *see United States v. Stepp*, 680 F.3d 651, 660 (6th Cir. 2012).

This evidence does not rise to the level of an impermissible legal conclusion. The words that the detective used do not contain a "separate, distinct and specialized meaning in the law." *Ahmed*, 472 F.3d at 434 (quotation omitted). For the term "possession," we have suggested that "there is no distinction between the legal term of art and the common vernacular usage that would render the testimony inadmissible under Rule 704." *United States v. Smith*, 70 F. App'x 804, 809 (6th Cir. 2003). If anything, the statements by the detective look more like the statement of a legal *rule* than a legal *conclusion*. She did not say that Draper violated the law; she asked him whether he knew the relevant law. *See Babb*, 942 F.3d at 317.

Any potential error was harmless anyway. After playing the video, the district court instructed the jury: "You are to follow only the Court's instructions as to the law, including the definition of possession that I just provided you. You should not consider anything the officers stated as constituting an instruction on the law." R.85 at 27. Except in the case of extraordinarily prejudicial evidence, such as the confession of a co-defendant, courts accept "the crucial assumption" of trial by jury that individual jurors "carefully follow instructions." *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). Plus, the evidence that Draper possessed the firearm was so overwhelming that a different verdict is difficult to imagine. Police officers found the .38 caliber pistol inside Draper's nightstand and a bag of loose ammunition in his bedroom. Given the overwhelming evidence that Draper possessed the firearm, we cannot conclude that the admission of a potential legal conclusion on the definition of "possession" had the "substantial influence" necessary to overturn his conviction. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

Draper insists that the video contains an impermissible legal conclusion, claiming that the detective's definition of "possess" differs from our circuit's definition of constructive possession. But this argument speeds over some important articles and adjectives. He relies in particular on *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984), for the holding that a "firearm found in trash can near defendant in home [sic] not sufficient to prove constructive possession." Appellant Br. at 12. The omission of an article or adjective before "home" papers over a crucial defect in Draper's argument: Beverly was not in his own house, and our circuit has cabined that case to showing when *proximity* (not home ownership or other evidence) can be used to prove constructive possession. *See United States v. Vichitvongsa*, 819 F.3d 260, 276 (6th Cir. 2016). In truth, we have been clear that "[a] jury is entitled to infer that a person exercises constructive possession over items found in his home." *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (quotation omitted).

*Jury Instruction on Knowledge of Conviction*. Draper challenges the district court's instruction on the mens rea requirement for his offense. Draper's statute of conviction, 18 U.S.C. § 924(a)(2), imposes a sentence of up to ten years for whomever "knowingly violates" § 922(g). That statute, in turn, prohibits possession of a firearm by a person who "has been convicted in any court of a misdemeanor crime of domestic violence." *Id.* § 922(g)(9).

In June 2019, six months before Draper's trial, the U.S. Supreme Court examined similar provisions in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The Court concluded that the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194; *see Greer v. United States*, 141 S. Ct. 2090, 2100 (2021).

The district court's instruction tracked the statute, as interpreted by *Rehaif*, to a tee. It instructed the jury on the four elements that made Draper's conduct criminal, including knowledge of status. And the jury had sufficient evidence before it to conclude that Draper knew of his status as a misdemeanant. He stipulated to the point after all.

Draper thinks the court should have requested a special verdict in which the jury would separately find that he knew about his prior conviction. He did not raise this objection below, making it eligible only for plain error review. *United States v. Stonefish*, 402 F.3d 691, 697 (6th Cir. 2005). He has not met that standard. "[S]pecial verdicts are not favored [in criminal cases] and may in fact be more productive of confusion than of clarity." *United States v. Blackwell*, 459 F.3d 739, 766 (6th Cir. 2006) (quotation omitted). Draper has not identified any case that requires a special verdict after *Rehaif*. Any error was not plain.

Draper's last argument—that the government must prove knowledge of the law, that is, that he knew his status made it illegal for him to possess a firearm—runs into circuit precedent. *United States v. Bowens* held that the government "must prove that defendants knew they were unlawful users of a controlled substance, but not, as defendants appear to argue, that they knew unlawful users of controlled substances were prohibited from possessing firearms under federal law." 938 F.3d 790, 797 (6th Cir. 2019). The argument fails under circuit precedent.

We affirm.