NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0171n.06

Case No. 21-3436

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 26, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| DIABLO DEVON TATE, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SILER, BUSH, and MURPHY, Circuit Judges.

BUSH, J., delivered the opinion of the court in which SILER, J., joined. MURPHY, J. (pp. 9–10), delivered a separate opinion concurring in the judgment.

JOHN K. BUSH, Circuit Judge. Diablo Tate was sentenced to seven years in prison after pleading guilty to possessing a firearm and ammunition as a felon and to possessing marijuana with the intent to sell it. Those charges were brought after police uncovered firearms and drugs during a search of his home. Before his guilty plea, Tate sought to suppress that evidence by arguing that police depended on false information to secure a search warrant. But success meant proving both that an officer made a deliberately or recklessly false statement and that any remaining truthful parts of the affidavit could not support probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The district court determined that Tate met neither requirement and denied his request for a hearing. We affirm.

I.

In late August 2018, police in Euclid, Ohio received complaints of suspicious drug activity at Tate's residence. The unidentified complainants claimed that a constant stream of people visited Tate's home and left after only a few minutes. So Euclid police began investigating. Officers' first move was a trash pull conducted the next month.[1] That comb through Tate's trash revealed several items: packaging labeled "Diablo O.G," seven vacuum-sealed bags and the cut-off ends of vacuum-sealed bags, marijuana stems, five marijuana roaches,[2] a bag with Tate's inmate information written on it, a receipt made out to Tate, and mail addressed to Tate from Texas and China. Test results revealed the presence of marijuana residue on the vacuum-sealed bags.

After surveilling the address and observing what they thought could be drug-trafficking activity, officers conducted a second trash pull. This time, they found miscellaneous mail addressed to Tate, three vacuum-sealed bags, a plastic bag containing "Platinum Girl Scout cookies" edible marijuana, and three marijuana roaches. And another test showed another positive result for marijuana residue on the bags.

Armed with that evidence, police sought a warrant to search Tate's residence. Detective Jose Alcantara recounted the details of the investigation, Tate's criminal case history, and his own experience conducting drug investigations in an affidavit. It contained a paragraph that Tate argues was deliberately false, at worst, and recklessly false, at best:

> Affiant avers that Detectives conducted surveillance of 19051 Genesee Ave during the last week of September. During surveillance, Detectives observed vehicle traffic during the early morning hours at the address. People would exit the car,

---

[1] It is what it sounds like: officers looked for evidence of criminal activity in the garbage cans placed at Tate's curb.

[2] "A 'roach' is what remains after a joint, blunt, or marijuana cigarette has been smoked. It is akin to a cigarette butt." *United States v. Abernathy*, 843 F.3d 243, 246 n.1 (6th Cir. 2016) (citation omitted).

enter the home, and return to the car a short time later. This activity, based on Affiant's training and experience, is consistent with drug trafficking.

Affidavit, R. 11-2, PageID 46–47. A judge of the Cuyahoga County, Ohio, Court of Common Pleas thought the affidavit was enough to support probable cause and issued the search warrant.

Police then searched Tate's residence. Inside, they found marijuana, a scale, packaging material (including labels, bags, and a bag sealer), three cell phones, and $607 in cash. They also found a loaded DPMS Panther AR-15 firearm, 378 rounds of .223 ammunition, a loaded magazine of 5.7x28 ammunition, a box of the same ammunition, an empty box for a pistol, and three unloaded magazines. Tate waived his *Miranda* rights and told police that the AR-15 was his girlfriend's and that he had accompanied her to a firing range. He further admitted involvement with packaging marijuana but assured police he was no kingpin.

That search resulted in Tate's indictment in the Northern District of Ohio several months later. He soon moved to suppress all the evidence seized during the search. He argued that the search warrant was not supported by probable cause because the trash-pull evidence was insufficient and that the good-faith exception could not apply. The district court disagreed. It ruled that although evidence gathered in a trash pull is often insufficient on its own, the other evidence presented to the state-court judge gave him a substantial basis to find probable cause. So it denied Tate's motion.

Eventually, however, the government handed over a video of its surveillance of Tate's residence. The video apparently showed one individual parking a vehicle outside, entering the home, and leaving quickly in the early-morning hours. And it showed another individual parking a vehicle across the street and entering the home before two individuals left and drove away in

other vehicles.[3] Tate thought this new material meant a second opportunity to have the evidence suppressed. So he renewed his motion to suppress. In his new motion, he argued that the video contradicted Alcantara's description of the surveillance. Tate thus saw the affidavit as "at the very least recklessly false," and, relying on *Franks*, 438 U.S. at 171, argued that it could not be used to establish probable cause. Addendum to Motion to Suppress, R. 20, PageID 89. And without the false information, he claimed the rest of the affidavit could not establish probable cause either.

Again, the district court thought otherwise and held that Tate was not entitled to a hearing under *Franks*. It "view[ed] the video in whole" and found that the statement in the affidavit was "a reasonable interpretation of the surveillance footage." December 17, 2019 Opinion & Order, R. 25, PageID 106. So it found that Tate had not met his burden to prove deliberate or reckless falsity. It also held that the affidavit could establish probable cause even without the allegedly false statement. His motion to suppress having been twice rejected, Tate pleaded guilty and received concurrent 84- and 54-month sentences. He now timely appeals.

---

[3] The seven-hour video is missing from our record. *See* Appellant Br. at 8, n.1 (noting the absence of the video from the record and limiting discussion of it "to that reflected in the pleadings below"). The district court received a copy of the video from the government and viewed it in full. A copy of the video might also aid our review. But it is not essential to our decision to affirm, for two reasons.

First, the parties and district court agree on most aspects of the video. Tate's description leaves out one detail about the first individual: in his version, the car apparently parks and drives away three minutes later without the driver exiting the vehicle, entering the home, and leaving the home. But he does not dispute the government and district court's inclusion of that latter detail in their descriptions. So we see no reason to reject their collective retelling of the video.

Second, as addressed more fully in Section II, the burden was on Tate to "accompany his allegations with an offer of proof." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). His motion described the contents of the video, but the district court had to wait for the government to provide it with a copy. *See* December 17, 2019 Opinion & Order, R. 25, PageID 104. And Tate's promised "motion to supplement the record with the video" never appears to have been filed here or in the district court. Appellant Br. at 8, n.1; *see also* Fed. R. App. P. 10(e)(2) (describing the process for correcting or modifying the record on appeal). Any blame for the video's absence from our record falls on Tate.

II.

Tate argues that the district court erred in denying his motion for a suppression hearing under *Franks*. We review the district court's findings of fact for clear error and review its conclusions of law de novo. *United States v. Rose*, 714 F.3d 362, 369–70 (6th Cir. 2013) (citing *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)).

The Fourth Amendments protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation[.]" *Id.* Much as we afford probable-cause findings "great deference," *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), we assign the affidavits supporting those findings a "presumption of validity," *Franks*, 438 U.S. at 171. But when a defendant makes "allegations of deliberate falsehood or of reckless disregard for the truth" against an affidavit, "accompanied by an offer of proof," he can overcome that presumption and impeach the contents of the affidavit at an evidentiary hearing. *Id.* at 171–72.

Make no mistake, though: proving entitlement to a *Franks* hearing is no easy task. A defendant must show both that the affiant included a false statement made intentionally, knowingly, or with reckless disregard for the truth *and* that, without the false statement, the remnants of the affidavit could not support probable cause. *Id.* The district court committed no error in ruling that Tate did not carry that heavy burden.

We begin and end with the first *Franks* requirement. Tate had to "make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit[.]" *Rose*, 714 F.3d at 370

(citing *Franks*, 438 U.S. at 171). An allegation of falsehood is insufficient on its own. Rather, "an offer of proof" had to accompany his allegations, and he needed to "provide supporting affidavits or explain their absence." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). This prong involves only a finding of fact. *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011). So we review the district court's decision for clear error and will reverse it only if "left with the definite and firm conviction that the district court made a mistake." *United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020) (cleaned up).

We are left with no such conviction. The district court inspected the two key parts of the affidavit in turn. The first says that "[d]etectives observed vehicle traffic during the early morning hours at the address[,]" and the second adds that "[p]eople would exit the car, enter the home, and return to the car a short time later." Affidavit, R. 11-2, PageID 46–47. The district court agreed with the affiant that the video showed two vehicles approaching the residence and stopping during the morning hours. *See* December 17, 2019 Opinion & Order, R. 25, PageID 106. It further found that the video showed two people exiting the vehicles, entering the residence, and returning to "a vehicle" soon after. *Id.* Ultimately, it concluded that the affiant's "interpretation of the video was a reasonable understanding of what he believed the facts to be." *Id.*

But Tate argues that the district court missed the point in its analysis. In his view, "the message intended by the affiant" was that "multiple people were each coming to the residence, entering, staying a few minutes, and then leaving." Appellant Br. at 16. And because "the surveillance video was inconsistent with the impression being portrayed in the affidavit[,]" it gave the Cuyahoga County judge a "false impression[.]" *Id.* at 17. He cites out-of-circuit cases involving material omissions to argue that "a false impression can be a *Franks* violation[.]" *Id.* at

17–18 (citing *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997); *State v. Olson*, 726 P.2d 1347, 1352 (Kan. Ct. App. 1986)).

Material omissions like those Tate describes can trigger a *Franks* hearing, but only "in 'rare instances.'" *Graham*, 275 F.3d at 506 (quoting *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998)). We have held that "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Id.* (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)); *see also United States v. Fowler*, 535 F.3d 408, 415–16 (6th Cir. 2008).

Even so, whether Tate thinks the false impression was caused by false information or a material omission, his arguments fail because of the dearth of evidence accompanying them. "A *Franks* violation . . . require[s] a showing of intent[.]" *Mays*, 134 F.3d at 816. And the defendant's allegations "must be more than conclusory[.]" *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (citing *Franks*, 438 U.S. at 171). Yet Tate offered little evidence showing that the affiant's description of the multi-day surveillance of Tate's residence was deliberately or knowingly false or made with a reckless regard for the truth. And his motion lacked "supporting affidavits or [explanations for] their absence." *Bennett*, 905 F.2d at 934 (citing *Franks*, 438 U.S. at 171).

Indeed, Tate's only supporting evidence was a written description of the surveillance video. He gave no actual video (or explanation for its absence) to the district court. Nor did he provide the video to us—rendering it exceedingly difficult to accept his argument that the district court clearly erred in interpreting the video. *See supra* note 3. This evidence, or lack thereof, falls well short of the burden required by *Franks*. *See Bennett*, 905 F.3d at 934 (citing *Franks*, 438 U.S. at 171). And so we discern no clear error in the district court's finding that Tate failed to satisfy the first prong of *Franks*.

III.

Even if Tate could make the required initial showing under *Franks*, he must also "prove[]" that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Rose*, 714 F.3d at 370 (citing *Franks*, 438 U.S. at 171–72). But we need not reach that issue because the district court did not err in ruling that Tate failed to make the showing required to receive a *Franks* hearing. We affirm.

MURPHY, Circuit Judge, concurring in the judgment. Criminal defendants often allege that police officers violated the Fourth Amendment by putting false information in the affidavit they used to obtain a search warrant. To receive an evidentiary hearing on this type of claim, a defendant must make a preliminary showing both that an officer deliberately or recklessly included the false information in the affidavit and that probable cause for the warrant would not have existed without that information. *See Franks v. Delaware*, 438 U.S. 154, 171–72 (1978); *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). Diablo Tate attempts to make this two-part showing for the affidavit used to obtain a warrant to search his home. In that affidavit, an officer asserted that surveillance of Tate's home had revealed "vehicle traffic" in which "[p]eople would exit the car, enter the home, and return to the car a short time later." Aff., R.11-2, PageID 46–47. This activity, according to the officer, was "consistent with drug trafficking." *Id.*, PageID 47. After receiving the video surveillance, though, Tate claims that these statements falsely implied that multiple people had been seen coming and going. My colleagues reject Tate's request for a *Franks* hearing on the ground that Tate did not show that the officer knowingly or recklessly included false information in the affidavit. I find this issue difficult to resolve, particularly since Tate did not include the video in the record on appeal (which might alone justify denial of relief).

I would instead resolve this case on the second element that Tate must establish to obtain a *Franks* hearing: that probable cause would not have existed without the allegedly false statement about the vehicle traffic at his home. *See Franks*, 438 U.S. at 171–72; *Bateman*, 945 F.3d at 1010. Probable cause requires only a fair probability that the sought-after evidence of a crime will be found at the particular place to be searched. *See United States v. Sheckles*, 996 F.3d 330, 337, 340 (6th Cir. 2021). Even without the video surveillance, the affidavit included enough other details to create such a fair probability that the police would find drugs in Tate's home. According to the

affidavit, police received a tip of "suspicious drug activity" at his home with a "constant traffic" of people visiting for short periods of time. Aff., R.11-2, PageID 46. In the next month, a police search of the trash left at the curb of Tate's home showed evidence of drug trafficking, including drug-packaging materials and marijuana residue, as well as mail addressed to Tate. *Id.* A second "trash pull" a week later showed more evidence of drug trafficking, including additional marijuana residue, and more mail connecting the trash to Tate and his home. *Id.*, PageID 47. To top it off, Tate had a lengthy criminal history of drug-trafficking crimes. *Id.* This evidence created a reasonable connection between the drugs and the home. *Cf. Sheckles*, 996 F.3d at 341.

In response, Tate points to our decision holding that a single trash pull that uncovers a small amount of marijuana packaging and residue does not alone suffice to create probable cause. *See United States v. Abernathy*, 843 F.3d 243, 251–56 (6th Cir. 2016). But *Abernathy* made clear that not much more corroborating information would be required to get over the probable-cause hump. It, for example, distinguished cases in which the relevant resident had a history of drug offenses or the police had received tips about drug activity at the home. *Id.* at 256 (distinguishing *United States v. Thurmond*, 782 F.3d 1042, 1043–44 (8th Cir. 2015); *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011); *United States v. Roberson*, 332 F. App'x 290, 291–92 (6th Cir. 2009)). Both corroborating factors—not to mention an additional incriminating trash pull—existed in Tate's case. *Cf. United States v. Martin*, 526 F.3d 926, 930, 935–37 (6th Cir. 2018); *United States v. Talley*, 692 F. App'x 219, 222 (6th Cir. 2017). And because the officer's affidavit established probable cause without the statement that Tate now challenges, the district court properly refused his request for a *Franks* hearing. I would affirm on this ground.